Lloyd M. LaVALLE, et al., Respondents,

v.

AQUALAND POOL CO., INC., Appellant,

W. J. Reitherman, Defendant.

No. 46982.

Supreme Court of Minnesota.

July 29, 1977.

Schermer, Schwappach, Borkon & Ramstead and Richard I. Diamond, Minneapolis, for appellant.

Coulter, Nelson & Sullivan, Mark Sullivan and Thomas J. Hunziker, Minneapolis, for respondents.

Heard before TODD, MacLAUGHLIN, and YETKA, JJ., and considered and decided by the court en banc.

MacLAUGHLIN, Justice.

Lloyd and Margaret LaValle brought an action for breach of contract against Aqualand Pool Co., Inc., alleging negligent installation and defective construction of a swimming pool on the LaValles' residential property. Aqualand crossclaimed for contribution or indemnification against William Reitherman, a codefendant, who had been hired by Aqualand to construct the pool, alleging that any defects in the construction resulted from Reitherman's negligence. The case was tried to a jury which found damages of $4,650 of which $1,150 was attributed to Reitherman. Aqualand appeals from the judgment. We affirm.

On August 2, 1973, the LaValles entered into a contract with Aqualand for the construction of a 20- by 40-foot in-ground, steel-walled, vinyl-lined swimming pool for a price of $6,900. Aqualand hired Reitherman, an independent contractor, to excavate and construct the pool at the LaValles' residence in Waconia, Minnesota, for a flat fee of $1,000. By a separate agreement the LaValles employed Reitherman, for an agreed price of $2,700, to perform additional work in connection with the pool, including construction of a pool deck, installation of a slide, diving board, ladder, and handrails purchased from Aqualand, and landscaping of the surrounding area. This separate contract between the LaValles and Reitherman was not at issue in the instant lawsuit.

In September 1973, after the construction of the pool was largely completed but before the concrete had been laid for the deck, the LaValles found that the northwest corner of the pool was lower than other parts of the pool and that the vinyl liner would not fit properly. LaValle stopped payment on his final check to Aqualand, and subsequently Reitherman returned and raised the sagging corner to bring it into line with the rest of the structure. LaValle then paid the remaining balance owed for the pool.

After completion of the pool and deck in October 1973, the LaValles used it for a short time, but in the spring of 1974 they noticed several additional problems of which they gave notice to Aqualand's vice-president, Harvey Blumenberg. Blumenberg inspected the work and, after draining the pool to replace an ill-fitting liner, discovered that the pool had not been constructed to the specified length of 40 feet but was actually 41½ feet long. Since the standard vinyl liner was made for a 20- by 40-foot pool, the one installed in plaintiffs' pool would not fit properly and a new one was available only by special order from a manufacturer in New Jersey. The pool was left unfilled during the 3 weeks required to obtain the extra-long liner.

When the new liner arrived, it was installed by Aqualand's workmen since Reitherman had refused to perform the necessary repairs. After the liner was in place the LaValles noticed new defects in the pool. The northwest corner which had been raised the previous fall was again lower than the rest of the pool; the steps protruded inward into the pool; and the northwest sidewall bowed inward.

When Aqualand refused to make further repairs, the LaValles began this action. At trial, the existence of the alleged defects was not disputed by Aqualand or Reitherman, and the sole question for decision by the jury was the amount of the LaValles' damages.

The evidence established that the assembly of the pool was made by Reitherman with pool panels of the wrong size, causing the pool to be 41½ feet in length rather than 40 feet as specified. Reitherman admitted that his men had procured the wrong panels from Aqualand and that he had not noticed the deviation upon installation. Reitherman also testified that bowing had probably occurred during the 3-week period when Aqualand's workmen had drained the pool and failed to brace the walls while waiting for the custom-made liner since without proper bracing of the sides such bowing is likely to occur.

Aqualand and Reitherman offered testimony of what they claimed it would cost to repair all the defects in the LaValles' pool. Blumenberg stated that the cost of repairs would be approximately $500 although he admitted that repair of the pool would necessitate tearing up part of the surrounding concrete deck and patching it after the repairs were completed. Blumenberg acknowledged that even after repairs the extra 1½ feet in length could not be altered and gave no guarantee that tearing up and replacing the deck would not be noticeable nor that the section replaced would not be weakened by being constructed separately and not attached to the unitary steel mesh which underlay the entire deck.

Reitherman gave testimony that the repairs could be made for $550 to $650. Aqualand's witness, Virgil Mulvaney, owner of a competing swimming pool company, testified that the cost of repairs would be approximately $600.

Plaintiffs' only witness was Lloyd La-Valle who testified that the pool and its surrounding area would have been worth approximately $10,000 if properly installed, based on the contract price of $6,900 paid to Aqualand and the $2,700 separately paid to Reitherman for the deck work and landscaping. LaValle further testified that in July 1974 the reasonable value of the entire improvement was $5,000.

After the case had been submitted to the jury by special verdict and plaintiffs' damages were assessed at $4,650, Aqualand moved the trial court for judgment notwithstanding the verdict or, in the alternative, for a new trial. This appeal followed denial of the motion and entry of judgment.

■ 1. Aqualand asserts that the trial court incorrectly charged the jury as to the measure of damages. The jury was instructed to apply the following rule:

" * * * In the absence of special circumstances showing approximate damages of a greater amount the loss or damage is the difference between the value of the property as delivered and installed and the value of the property delivered and installed if it had been delivered and installed as agreed upon. * * * "

The record discloses the following declaration by Aqualand's counsel just after the final arguments:

"Your Honor, I wish to state for the record that I have discussed this matter with the other counsel and in light of the fact that we have thoroughly discussed the instructions that the court proposed to give in this matter and we have all agreed to those instructions, and also in light of the fact that each one of us has various things after the noon recess, it's my understanding that each and every counsel would waive presence during the time that the jury is instructed, and we will also waive appearance at the time that the verdict is returned * * * ."

The waiver of presence of counsel during the jury instructions was concurred in by counsel for plaintiffs and for Reitherman, and agreed to by the trial court. Aqualand now claims that the jury should have been instructed that the cost of repairs would be the proper measure of damages under the facts and circumstances of this case. However, it is clear that the instructions were generally discussed and approved by all counsel prior to the charge to the jury, that counsel waived the right to be present during the charge, and that the trial court gave the instructions as previously discussed and approved without any objection by counsel. Under all these circumstances, we will not

consider on this appeal any allegation of erroneous instructions.

2. Aqualand argues that the damages awarded were excessive and that the verdict was not justified by the evidence, and was influenced by passion and prejudice of the jury. It contends that the jury verdict is not supported by the evidence because the only testimony offered by plaintiffs concerning the diminution of value of the defective pool was given by LaValle himself.

We have held that testimony of an owner as to the value of his property is competent evidence, and that lack of foundation goes only to the weight of the testimony and not to its admissibility. *Jackson v. Buesgens,* 290 Minn. 78, 186 N.W.2d 184 (1971); *State, by Mattson, v. Schoberg,* 279 Minn. 145, 155 N.W.2d 750 (1968). The owner of real property is competent to testify concerning the value it would have had if constructed according to the contract and its value as actually constructed. *Knutson v. Lasher,* 219 Minn. 594, 18 N.W.2d 688 (1945).

In the instant case, therefore, LaValle was competent to offer testimony with respect to the diminished value of his property as a result of the defective pool installation. The fact that LaValle's testimony as to the diminution in value of his property differed from the testimony by defendant's experts as to the cost of repairs was only an additional factor to be considered by the jury. Moreover, the jury may have accorded LaValle's testimony greater weight because of his experience as general contractor in the construction of his own house.

The opinions of expert witnesses are not binding or conclusive upon a jury but are only items of evidence to be considered along with other evidence in the case. In *State, by Lord, v. Pearson,* 260 Minn. 477, 492, 110 N.W.2d 206, 216 (1961), where the only evidence relating to damages was opinion testimony, we observed:

" * * * When the question of damages is submitted to the jury the opinions of the experts are merely advisory, and the jury is not bound thereby. The jury may give more weight to the witnesses' testimony of one side than that of the other, but that fact is not a sufficient ground for granting of a new trial. * * * "

A new trial should not be granted unless the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence or acted under some mistake or from some improper motive, bias, feeling or caprice, instead of honestly and dispassionately exercising its judgment. The trial court, having heard the testimony and observed the parties and witnesses, is in a better position than this court to determine whether the damages were given under the influence of passion and prejudice, and in the absence of a clear abuse of that discretion its action will not be reversed. *DeWitt v. Schuhbauer,* 287 Minn. 279, 177 N.W.2d 790 (1970).

A careful review of the evidence in the instant case does not reveal any abuse of discretion by the trial court in refusing to set aside the award of damages. The testimony of defendants' witnesses was not convincing as to the time and expense necessary to repair the defects in plaintiffs' pool. Further, the trial court's instruction, which is the law to be applied in this case, referred only to the diminution in value and did not instruct the jury to consider the cost of remedying the defects. Because the difference in value of the pool as constructed and the pool as contracted for was the only measure of damages for the jury's consideration, and since LaValle testified to a diminution in value of $5,000, it cannot be said as a matter of law that the jury's verdict was palpably contrary to the evidence viewed in the light most favorable to the prevailing party.

Affirmed.