**STATE of Minnesota, individually and on Behalf of Karleen Dawn Wilberg, Petitioner, Appellant,**

v.

**Irvin HAGEN, Respondent.**

**No. CX–85–1675.**

Court of Appeals of Minnesota.

March 4, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Kevin T. Duffy, Asst. Pennington Co. Atty., Thief River Falls, for petitioner, appellant.

Kurt J. Marben, Thief River Falls, for respondent.

Considered and decided by HUSPENI, P.J., and FOLEY and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

NIERENGARTEN, Judge.

The state brought a paternity action against respondent, Irvin Hagen, alleging that Hagen was the father of Karleen Wilberg's child. A jury returned a verdict for Hagen. The trial court denied Wilberg's motion for a judgment notwithstanding the verdict, and alternatively for a new trial. We affirm.

## FACTS

In January or February 1982, Karleen Wilberg and respondent Irvin Hagen engaged in sexual intercourse without using a birth control device. Wilberg gave birth on November 7, 1982.

Wilberg told her doctor her last menstrual period was February 21, 1982 from which the doctors calculated a November 27, 1982 due date, with March 7, plus or minus 10 days, as the date of conception.

Hagen denies that he is the father of Wilberg's baby. He admits having sexual intercourse with Wilberg only once in late January 1982, recalling that it was before his father's hospitalization on February 1, 1982.

Hagen testified he spent every weekend in February and March at his wife's home in Thief River Falls with whom he had reconciled at the end of January, and he did not see Wilberg again until April when she told him she was pregnant. Hagen's wife corroborated his testimony that they reconciled in late January 1982 and that from February 5 through March 1982, Hagen spent every weekend at her home, caring for their children.

Wilberg testified she only had sexual intercourse twice during January or February 1982, her partner both times being Hagen, thereby contradicting previous testimony that sexual intercourse was completed only once sometime during February. She could not remember exact dates.

Wilberg's mother, with whom Karleen and her child were living, testified that her daughter did not have any male visitors at her home, other than Hagen, between Sep-

tember 1981 and March 1982. However, Wilberg admitted that in January or February 1982 a male friend stopped to see her at her mother's residence and made sexual advances toward her and that her mother was aware of the incident.

Wilberg, Hagen and the child submitted blood samples for genetic testing by the Minneapolis War Memorial Blood Bank, under the direction of Dr. Herbert L. Polesky. The results indicated a 93.6% likelihood that Irvin Hagen could be the father. Several other blood tests raised the likelihood of Hagen's paternity to 99.62%.

Polesky testified that in 95% to 97% of the cases, a man not the biological father will be excluded by testing procedures. It was Polesky's opinion that Hagen was the father based on the test results and assuming Hagen had access to Wilberg at the time of conception.

## ISSUES

1. Was the evidence so overwhelmingly in favor of appellant that the trial court erred in denying appellant's motion for a judgment notwithstanding the verdict?

2. Did the trial court err in denying appellant's motion for a new trial where genetic tests indicated Hagen's likelihood of paternity was 99.62%?

## ANALYSIS

■ 1. Wilberg first argues that the trial court erred in denying the motion for a judgment notwithstanding the verdict. An order denying a motion for a judgment notwithstanding a verdict is non-appealable order. *State ex rel. Pula v. Beehler,* 364 N.W.2d 860, 862 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. June 4, 1985). However, Wilberg's arguments on the issue of whether the trial court should have granted a new trial covers essentially the same area.

2. Wilberg contends the trial court should have granted a new trial because the verdict is not supported by the evidence. *See* Minn.R.Civ.P. 59.01(7). She argues that the blood tests showing a 99.62%

likelihood that Irvin Hagen is the child's father, plus her testimony that she did not engage in sexual intercourse with anyone else, justify a new trial.

The test for granting a new trial is:

A new trial should not be granted unless the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence or acted under some mistake or from some improper motive, bias, feeling of caprice, instead of honestly and dispassionately exercising its judgment.

*LaValle v. Aqualand Pool Co., Inc.,* 257 N.W.2d 324, 328 (Minn.1977).

■ In reviewing a jury verdict on appeal, the court must consider the evidence in a light most favorable to the prevailing party and must sustain the verdict unless it is manifestly against the evidence. *Cobb v. Aetna Life Insurance Co.,* 274 N.W.2d 911, 917 (Minn.1979).

There is no dispute that Hagen and Wilberg engaged in sexual intercourse at least once and that no birth control devices were used. Hagen claims intercourse occurred before his father's illness on February 1, during the time he and his wife were separated. His wife verified the date of their reconciliation as the end of January.

Other evidence tending to support Hagen's version of events includes:

1) medical testimony that conception took place on or about March 7, give or take 10 days, and that the date of birth was consistent with this.

2) medical testimony that the infant was normal, full-term and that he did not appear to be post-term.

3) contradictory statements between Wilberg and her mother as to whether Wilberg had any male visitors during February.

4) Wilberg's uncertainty as to the dates Hagen spent the night with her.

On the other hand, blood test results place the likelihood of Hagen being the father at 99.62%. Even with this, Dr. Herbert Polesky testified that blood tests cannot establish paternity with absolute cer-

tainty. A letter from Polesky explaining the test results stated:

> The significance of this evidence must be weighed with other factors in this case, such as access by the alleged father or other individuals proximate to the time of conception.

█ The supreme court has indicated that blood tests are not necessarily conclusive proof of paternity. "[T]he results of such blood tests are admissible in evidence weighed in accordance with evidence, if available, of the statistical probability of the alleged father's paternity." *State ex rel. Hastings v. Denny*, 296 N.W.2d 378, 380 n. 1 (Minn.1980). *See also* Minn.Stat. § 257.62 (1984). A blood test is only one factor to be considered and weighed by a jury in determining paternity. *Beehler*, 364 N.W.2d at 863.

█ Since the blood tests are not conclusive evidence of paternity, the jurors also were required to consider whether Hagen and Wilberg engaged in sexual intercourse between mid-February and mid-March. The jury, here, obviously believed that Hagen did not have access to Wilberg during the time of conception. This is a credibility determination. Credibility determinations are for the finder of fact and should not be disturbed on appeal. *De-Mars v. State*, 352 N.W.2d 13, 16 (Minn. 1984).

## DECISION

Affirmed.