James **GERTKEN** as Trustee for the next of kin of Shirley Gertken, deceased, and James Gertken, individually, Appellant,

v.

**FARMERS ELEVATOR OF KENSINGTON, MINNESOTA, INC., et al., Robert Holthaus, etc., Respondents.**

No. C9–86–2147.

Court of Appeals of Minnesota.

Sept. 1, 1987.

Review Denied Oct. 28, 1987.

Paul J. Wocken, Willenbring, Lickteig & Dahl, Cold Spring, for appellant.

Henry A. Cousineau, Jr., Mark A. Gwin, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, John H. Scherer, Donohue, Rajkowski, Hansmeier, Grunke & Jovanovich, Ltd., St. Cloud, for respondents.

## OPINION

HUSPENI, Judge.

This is a wrongful death action arising from an automobile collision. The jury found no negligence had been committed by either of the drivers. The trial court denied appellant's motion for judgment notwithstanding the verdict or for new trial and this appeal followed. Appellant claims the trial court erred by refusing to allow

evidence regarding failure to lend reasonable post-collision assistance pursuant to Minn.Stat. § 169.09, subd. 3(a) (Supp.1983). Additionally, appellant claims there was no evidence to rebut the presumption of the car driver's negligence. We affirm.

## FACTS

Appellant James Gertken brought this wrongful death action following the death of his wife, Shirley Gertken, on November 9, 1983. During the early morning hours on that day, Mrs. Gertken was riding to work in St. Cloud as a passenger in a car driven by her sister, Jeanie Holthaus. Wet snow was falling, and the highway was covered with one to two inches of slush. The car crossed the center line, sliding rear end first into the oncoming traffic lane at a speed estimated at between 20 and 60 miles per hour.

A Mack truck and trailer driven by respondent Wilfred Lintel was approaching the Holthaus car in the oncoming traffic lane at a speed of about 40 to 50 miles per hour. The right front of the truck collided with the left rear portion of the car, reversing the car's path of travel and forcing it into a water-filled ditch. The driver of the car was killed by the impact. Shirley Gertken was thrown from the vehicle into the ditch.

Lintel, shaken but unhurt, stopped his truck about 300 feet away from the car. He alighted from his truck and proceeded to "flag down" passing motorists to assist him. Scott Lewandowski, a motorist who had witnessed the accident, stopped and offered assistance. At trial, Lewandowski testified:

> I pulled up and asked [Lintel] if he needed a lift into town. I thought, mechanical problems. And he said, "I just hit a car. Would you go into town and get some help." I said, "I know CPR." And I pulled my car in front and ran back to the car, and then I walked back. I stopped—I came up from the road. I stopped another car, and I said, "Would you please go call an ambulance and a rescue squad. This person is dead in the car." I didn't see the second person. I

walked back to the trucker and I said, "The person is dead," and he just said, "Oh, my God." * * * And so we just sat and waited for the Highway Patrol, and he was—he really looked faint and sick. He felt really bad, you know.

This is consistent with Lintel's testimony at a deposition taken prior to trial. He stated:

Q. * * * [Y]ou could see [the car] in the ditch?

A. Yes.

Q. Was Mr. Lewandowski looking at the wreckage to see if anyone was okay, or do you know?

A. Well, he told me he was going to go back and look.

Q. And you said you were unable to do that; is that correct?

A. Yes.

Q. Did you talk to him after he went to look?

A. Yes.

Q. What was involved in that conversation; do you remember that?

A. I asked him if anybody, you know, was alive, and he said, "No, it's gone."

Q. And did he say how many people were riding in the other vehicle?

A. No.

As the testimony indicates, Lewandowski did not see Mrs. Gertken's body in the ditch. A rescue worker who arrived at the scene a short time later observed a human foot protruding from water in the nearby ditch. Members of the rescue squad then discovered Mrs. Gertken's body.

Although no autopsy was performed, the county coroner concluded that Mrs. Gertken died from drowning after entering the ditch. A laceration to the scalp was the only injury discovered through visual examination of the body.

Mr. Gertken brought a wrongful death action against Lintel and Holthaus, alleging negligence. Lintel's employer was joined as respondent superior. Three months prior to trial, Gertken's attorney notified respondents that he intended to introduce evidence of Lintel's negligent failure to render post-collision assistance pursuant to Minn.Stat. § 169.09, subd. 3(a).

At trial, Gertken was prepared to present evidence to support this theory. The trial court refused to admit the evidence because the complaint failed to plead this theory of negligence with specificity and because the court concluded that the statute did not give rise to a private right of action. Gertken then moved to amend the complaint to include specific language, but the court denied the motion.

The jury found Gertken had sustained damages of $200,000, but found no negligence on the part of either driver. Gertken moved for judgment notwithstanding the verdict and for a new trial, but the court denied the motion. The trial court reasoned in the memorandum accompanying its order:

> [A] new trial is requested by [appellant] on the ground that the trial court's denial of the motion to amend their complaint to include a cause of action Minn.Stat. § 169.09 constitutes reversible error. * * * [Appellant] neglected to make this motion until the day the trial commenced. The untimeliness of [appellant's] motion provides one reason for denying it. In addition, under the facts of this case, no reasonable jury could find that Lintel had failed to render reasonable assistance. The evidence is such that it appears * * * Lintel did everything humanly possible to assist [appellant's] decedent. Finally, it is worthy of note that the statute under which [appellant] seek[s] recovery is one designed to regulate conduct after a traffic accident occurs. There is nothing in the language of the statute to indicate that it creates a private right of action.

Gertken now appeals from the order denying his motion.

## ISSUES

1. Did the trial court err in refusing to admit evidence regarding a duty to render post-collision assistance?

2. Was there sufficient evidence to support the jury's verdict of no negligence on the part of Jeanie Holthaus?

## ANALYSIS

An order denying a motion for judgment notwithstanding the verdict is a non-appealable order. *State v. Hagen*, 382 N.W.2d 556, 558 (Minn.Ct.App.1986). If the arguments raised in the new trial motion cover essentially the same area, this court may review the issues. *Id.* Gertken's arguments for judgment notwithstanding the verdict are the same as his arguments for new trial. As such, the arguments are properly reviewable.

### I.

Minn.Stat. § 169.09, subd. 3(a) (Supp. 1983) provides:

> The driver of any vehicle involved in an accident resulting in bodily injury to or death of any person * * * shall render reasonable assistance to any person injured in the accident.

Gertken claims this statute created a duty which Lintel breached when he failed to walk back to the wreckage and render assistance to Shirley Gertken and Jeanie Holthaus. Gertken claims Lintel's failure to pull Shirley Gertken out of the ditch was the cause of her death by drowning. While the record supports the contention that Lintel failed to walk back to the car, we cannot conclude that Lintel failed to provide assistance under the facts of this case.

Lintel asked Lewandowski to summon help. Instead, Lewandowski stated that he knew CPR and proceeded to go to the Holthaus car to render whatever assistance he could. He found the body of Holthaus and determined that she was dead. He did not discover Mrs. Gertken's body. Lewandowski then returned to Lintel and told him that Holthaus, the only person he had seen, was dead. Based on this information, Lintel and Lewandowski waited for the highway patrol to arrive. They also placed safety markers to warn other drivers.

The facts show that Lintel took steps to obtain assistance. Relying upon the information reported by Lewandowski, Lintel understandably assumed that he could render no further assistance to the occupant of the other vehicle. As a result, we cannot agree with Gertken that Lintel

failed to provide emergency assistance to Mrs. Gertken.

In consideration of the facts of this case, any attempt by this court to address further the issue of the applicability of Minn. Stat. § 169.09, subd. 3(a) would result in an opinion that was advisory only. Even if we were to assume for purposes of our analysis that violation of section 169.09 might give rise to a private cause of action, there could be no such cause of action here. We agree with the trial court that "no reasonable jury could find that [respondent] failed to render reasonable assistance." In view of our resolution of this issue, we do not address the propriety of the trial court's refusal to allow amendment of the complaint.

## II.

■ Gertken also seeks a new trial because he claims the jury's finding that Jeanie Holthaus was not negligent was against the weight of the evidence. A new trial will be granted only where the verdict is so contrary to the evidence as to imply that the jury failed to consider all the evidence or acted from some mistake, improper motive, bias, feeling or caprice, instead of honestly and dispassionately exercising its judgment. *LaValle v. Aqualand Pool Co. Inc.*, 257 N.W.2d 324, 328 (Minn.1977).

■ Because it was uncontroverted that the Holthaus vehicle crossed the center line in violation of statute, there was a prima facie case of negligence against Holthaus. *See* Minn.Stat. §§ 169.14 and 169.-96 (1982). Holthaus had a duty to rebut the prima facie case of negligence by establishing some reason why her car crossed the center line without any negligence on her part. *See, e.g., Mikes v. Baumgartner*, 152 N.W.2d 732 (Minn.1967). Where there is evidence which tends to establish excuse or justification, the question of whether there was negligence is for the jury. *Roeck v. Halvorson*, 254 Minn. 394, 397, 95 N.W.2d 172, 175 (1959).

■ Here, the trial court ruled the jury could have found the dangerous road conditions caused the vehicle to cross the center

line without any negligence on Holthaus's part, thus rebutting the presumption. The trial court stated:

> In this case, evidence presented suggested that the road conditions were dangerous on the day of the accident. It had been snowing and the road was covered with slush. The jury could have found that these conditions caused the Holthaus vehicle to suddenly cross the center line without any negligence on Holthaus' part.

We agree with this analysis. There was sufficient evidence for the trial court to allow the jury to decide whether Holthaus had been negligent. We cannot say that the jury acted from some mistake, improper motive, bias, feeling or caprice.

## DECISION

The trial court did not err in excluding evidence of post-collision negligence. The jury's finding of no negligence on the part of Holthaus was supported by the evidence.

Affirmed.

LESLIE, Judge (dissenting).

I respectfully dissent. I feel Minn.Stat. § 169.09 must be addressed by this court; it makes no sense to discuss whether Lintel's assistance was reasonable without first deciding if he had a duty to render reasonable assistance. Secondly, there was no evidence to rebut the prima facie case of negligence against Holthaus.

### I. Duty to Render Post Collision Assistance

Gertken claims Minn.Stat. § 169.09, subd. 3 (Supp.1983) created a duty which Lintel breached when he failed to walk back to the wreckage and render assistance to Shirley Gertken and Jeanie Holthaus. Gertken claims Lintel's failure to pull Shirley Gertken out of the ditch was the cause of her death by drowning. The trial court did not allow this theory to go to the jury due to lack of notice. The court also ruled that the statute created no private cause of action and that Lintel had, as a matter of law, rendered reasonable assistance. The trial court's rationale was erroneous. Al-

though I would affirm the trial court's decision to exclude evidence regarding this theory, I would do so on different grounds.

First, Gertken properly pleaded negligence and gave sufficient notice of the use of this theory. The complaint alleges Lintel was "negligent in failing to keep a proper lookout, to operate at a speed which was safe for the conditions, to take appropriate action to avoid the collision, *and otherwise.*" (Emphasis added). This language does not preclude the use of the theory of post-collision negligence. Additionally, Gertken specifically notified respondents over 90 days prior to trial that he would be presenting evidence on the theory of post-collision negligence. Thus, respondents can claim no surprise or prejudice by the presentation of the theory.

A violation of a traffic law is prima facie evidence of negligence. Minn.Stat. § 169.-96 (1982). Although section 169.09 may not "create a private right of action" for failure to render post-accident negligence, a violation of statute should be allowed into evidence to show negligence. The trial court was incorrect in excluding such evidence.

Finally, it is erroneous to state as a matter of law that Lintel rendered reasonable assistance. He did not even go back to the wrecked vehicle to attempt to render assistance. However, even though he failed to lend assistance, Lintel's inaction was not a cause of Gertken's death. The accident happened in the early morning hours and when the motorist went to look at the wrecked vehicle it was still dark. Because that person did not notice Gertken's body in the nearby water, it would be mere speculation to conclude Lintel would have noticed the body. Therefore, no evidence suggests Lintel's inaction was a cause of Gertken's death. I would acknowledge the duty to render post-collision assistance under Minn.Stat. § 169.09, subd. 3, but rule as a matter of law that Lintel's inaction was not a cause of Gertken's death.

Although neither party raised the issue on appeal, there was some discussion before the trial court on whether Minnesota's Good Samaritan Law conflicts with the duty created by Minn.Stat. § 169.09, subd. 3. The Good Samaritan Law creates a duty for any person at the scene of an emergency to render assistance to anyone who has suffered harm. Minn.Stat. § 604.-05, subd. 1 (Supp.1983). The statute in effect at the time of the accident also provided:

Any person, * * * who without compensation or the expectation of compensation renders emergency care at the scene of an emergency or during transit to a location where professional medical care can be rendered, is not liable for any civil damages as a result of acts or omissions by that person in rendering the emergency care unless that person acts in a willful and wanton or reckless manner in providing the care.

Minn.Stat. § 604.05, subd. 2.

Where general and specific statutes conflict, "the two shall be construed, if possible, so that effect may be given to both." Minn.Stat. § 645.26, subd. 1 (1982). While at first blush the Good Samaritan Law and Minn.Stat. § 169.09, subd. 3 may appear to conflict, it is possible to give effect to both statutes. Both create a duty to render assistance to an injured person; section 169.09 imposes the duty only to those involved in the accident which caused the injury while the Good Samaritan Law imposes the duty upon all those who are at the scene of an emergency. Minn.Stat. § 169.96 provides that a violation of section 169.09 is prima facie evidence of negligence and I would affirm this interpretation in this case.

However, subdivision two of the Good Samaritan Law shields from civil liability *any person* who renders assistance in good faith at the scene of an accident. Minn. Stat. § 604.05, subd. 2. Thus, a person who complies with the duty provided in section 169.09 to render reasonable assistance, will be able to use subdivision two of the Good Samaritan Law to protect themselves from civil liability. This interpretation gives both section 169.09 and the Good Samaritan Law effect.

In the present case, the Good Samaritan Law is inapplicable. Lintel totally failed in

his duty to render assistance. The shield of the Good Samaritan Law only applies to those who render care at the scene of an emergency. Because the Good Samaritan Law was inapplicable to Lintel, he had the burden of rebutting the prima facie evidence of negligence, as provided in Minn. Stat. § 169.96, against him. As discussed above, I would hold as a matter of law that Lintel's negligence was not a cause of Gertken's death.

## II. No Evidence Rebutting the Prima Facie Case of Negligence

I also disagree with the majority's decision regarding Holthaus' negligence. Because it was uncontroverted that the Holthaus vehicle crossed the center line in violation of statute, there was a prima facie case of negligence against Holthaus. *See* Minn.Stat. §§ 169.14 and 169.96. Holthaus had the duty to rebut the prima facie case by establishing by credible evidence some reason why her car crossed the center line. *See Mikes v. Baumgartner*, 277 Minn. 423, 152 N.W.2d 732 (1967). Where there is a failure of such evidence, the violation is negligence as a matter of law. *Riley v. Lake*, 295 Minn. 43, 53, 203 N.W.2d 331, 338 (1972).

The law of the case as instructed by the trial court on the duties imposed by the Minnesota Highway Traffic Regulation Act are as follows:

A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

Now then, in all civil actions a violation of any of the provisions of the traffic laws by either or any of the parties to such action or actions shall not be negligence per se but shall be prima facie evidence of negligence only. Prima facie evidence of negligence means evidence of negligence which is sufficient to establish the negligence if the violation is not excused or justified.

In other words, if any of the foregoing statutes was violated, *the violation is negligence unless you should find evidence tending to show reasonable excuse or justification* or evidence from which a reasonable person under the circumstances then existing could reasonably believe that such violation would not reasonably endanger any person entitled to the protection of the statute. (Emphasis added.)

Post trial, the trial court ruled the jury could have found the dangerous road conditions caused the vehicle to cross the center line without any negligence on Holthaus' part, thus rebutting the presumption. However, there is no evidence to support the trial court's theory. There were no unforeseen weather conditions. The snow had been falling heavily for some time prior to the accident. These conditions were steady and consistent, unlike hitting a sudden patch of ice. The fact that snow and slush were on the roadway cannot automatically exonerate a driver from a violation of the law. Such conditions are often present on Minnesota roads.

In any event, a driver has the duty to drive according to conditions. There were several vehicles traveling on the same side of the road as Holthaus, some ahead and some behind her. These vehicles were driving under the same conditions and none of them crossed the center line. The jury's finding that Jeanie Holthaus was not negligent was against the weight of the evidence. There was simply no evidence to rebut the prima facie case of negligence against Holthaus and thus Holthaus was negligent as a matter of law. *Riley*, 295 Minn. at 53, 203 N.W.2d at 338. I would reverse the trial court and remand the case with instructions to enter judgment in favor of Gertken and against Holthaus in the amount of $200,000.

FOLEY, Judge (dissenting).

I join in the dissent of Judge Leslie.

SEDGWICK, Judge (dissenting).

I join in the dissent of Judge Leslie.

FORSBERG, Judge (dissenting):

I join in the dissent of Judge Leslie.

POPOVICH, Chief Judge (concurring in part and dissenting in part).

I respectfully concur in part and dissent in part because:

1. I agree with Judge Leslie that Minn. Stat. § 169.09, subd. 3 (1986) creates a duty to provide reasonable assistance, a violation of which is prima facie evidence of negligence. Minn.Stat. § 169.96 (1986). The trial court erred in excluding evidence of post-collision negligence. The plaintiff's complaint was broadly pleaded and needed no additional specificity. Even if it did, the trial court erred in prohibiting amendment of the complaint.

2. I disagree with the majority finding that as a matter of law Lintel's inaction was not the cause of Gertken's death. All evidence was not received. It should have been submitted as a jury question.

3. I agree with Judge Leslie that the Good Samaritan Law, Minn.Stat. § 604.05 (1986), and Minn.Stat. § 169.09, subd. 3 are compatible and can be so interpreted.

4. I concur with the majority that Holthaus' negligence was for the jury to decide. There was sufficient evidence to support the finding of no negligence. *Siegler v. Connor*, 396 N.W.2d 612 (Minn.Ct.App. 1986).

RANDALL, Judge, concurring specially.

I concur in the majority decision because of the result. However, I agree with the concurrence of Judge Nierengarten that no inference should be drawn from the majority that Minn.Stat. § 169.09, subd. 3(a) (Supp.1983) gives rise to a private civil cause of action. Violating section 169.09, subd. 3(a) is a misdemeanor, pursuant to section 169.09, subd. 14(d) (Supp.1983). I do not see any other legal sanctions.

Appellant attempted to convince the court to instruct the jury in conjunction with section 169.09, subd. 3(a); Minn.Stat. § 169.96 (1982);[1] and 4 Minnesota Practice, CIV. JIG 302 (1986).[2] I do not find that those three instructions are applicable, either by statute or by case law, to post-collision matters.

First of all, section 169.09, subds. 3(a) and (b) are directory, as Judge Nierengarten points out. They are intended primarily for informational purposes, and do not bear any relationship to the manner in which the accident happened. Minn.Stat. § 169.96 is intended to allow plaintiffs to use, as prima facie evidence, violations of section 169.96's provisions relating to driving conduct. Minn.Stat. § 169.96 ends with, "shall be prima facie evidence of negligence only." If section 169.96 literally applies to all provisions of ch. 169, then, since section 169.09, subd. 3, does not differentiate between the driver rendering reasonable assistance and the driver's responsibility to give his name, address, date of birth, etc., it follows that in a negligence action the plaintiff is entitled to section 169.96 and to CIV. JIG 302 if the defendant failed to give his address or date of birth.

Yet, we know this is not the case. Failure to give that information is relevant only if a misdemeanor charge is filed against the driver, it is not relevant in a civil lawsuit for injuries. As to the question of negligence for causing the accident, such information is irrelevant.

I would find that a plain reading of Minn. Stat. § 169.09, subd. 3, leads to the conclusion that this subdivision does not relate to negligence. Thus I would find that Minn. Stat. § 169.96 and CIV. JIG 302 are also inapplicable to post-collision causes of action.

Further, I believe the Good Samaritan Law, Minn.Stat. § 604.05, subd. 2 (Supp. 1983), overrides the defendant's civil expo-

---

1. Minn.Stat. § 169.96 (1982) states, in pertinent part:

   In all civil actions, a violation of any of the provisions of this chapter, by either or any of the parties to such action or actions shall not be negligence per se but shall be prima facie evidence of negligence only.

2. 4 Minnesota Practice, CIV. JIG 302 (1986) states, in pertinent part:

   2. (*Read Minn.Stat. 169.96, prima facie negligence:* In all civil actions a violation of any of the provisions of this chapter, by either or any of the parties to such action or actions shall not be negligence per se but shall be prima facie evidence of negligence only.)

sure, if any, should Minn.Stat. § 169.09, subd. 3, be found to give rise to a private cause of action. Although Minn.Stat. § 604.05 neither refers to "drivers" specifically nor to section 169.09, subd. 3, it uses the words, in both subdivisions 1 and 2, "any person." The words "any person" by definition, have to include drivers of vehicles unless drivers are expressly excluded. Here they are not. Without clarification from the legislature, I see no reason to judicially exclude drivers from the protection of section 604.05.

Assuming arguendo, the driver of a vehicle involved in an accident absolutely "froze" at the scene, and sat and did nothing until other people or the authorities arrived, that driver might not come under the "shelter" of section 604.05, subd. 2. However, I still would not find a private cause of action by combining section 169.-09, subd. 3; section 169.96; and CIV. JIG 302. Following an accident, a driver is likely to be in some state of shock, fear, or dazed condition, or be injured himself. The problem would be almost insurmountable to relate his decision to stay in his car to the questions of negligence and proximate cause for the plaintiff's injuries allegedly received in the post-collision circumstances, as appellant did in this case. I will only enumerate, but not go into detail, the possible problems if such a private cause of action were to exist. First of all, serious issues of vehicle liability coverage would arise. Post-collision conduct really has nothing to do with driving the car. Second, the issue of what is "reasonable assistance"[3] is not susceptible of an instruction on prima facie negligence, as speeding or running a stop sign are. What we understand to be driving conduct violations in Minn.Stat. ch. 169 are objective standards. Speeding, running stop signs, driving while intoxicated, and all other acts prohibited by Minn.Stat. ch. 169 are readily definable by the trier of fact. On the other hand, what is "reasonable assistance" for a youthful driver, an elderly driver, a slightly injured driver, a seriously injured driver, a disabled or handicapped driver, a driver completely

unschooled in post-collision safety techniques, a driver partially or fully schooled in post-collision safety techniques, etc.?

The present common law tort of leaving an injured person in a worse condition than you found him, or attempting to give aid with reckless or gross indifference, is sufficient to cover post-collision claims. I would not enhance the simple directional statement in section 169.09, subd. 3(a) by the application of section 169.96 and CIV. JIG 302.

WOZNIAK, Judge (concurring specially).

I join in the special concurrence of Judge Randall.

NORTON, Judge (concurring specially).

I join in the special concurrence of Judge Randall.

NIERENGARTEN, Judge, concurring specially.

I concur in the majority decision because of its result and I agree that the facts of this case show Lintel rendered "reasonable assistance" under the circumstances. However, I do not agree with the suggestion that Minn.Stat. § 169.09, subd. 3 gives rise to a private cause of action.

Section 169.09 is intended primarily for informational and statistical purposes and to ensure highway traffic accidents are duly reported. Violations of Minn.Stat. § 169.09, subd. 3(a) are punishable by criminal sanctions. *See* Minn.Stat. § 169.09, subd. 14(d) (Supp.1983) (violation of subdivision 3(a) is a misdemeanor); *see also* Minn.Stat. § 609.02, subd. 3 (defining misdemeanors as crimes). I would adhere to the time-honored maxim of statutory construction: *Expressio unius exclusio alterius est.* Since the legislature expressly imposed criminal sanctions, it must have intentionally omitted civil liability. Had the legislature intended to allow civil liability, it could have done so. *Cf.* Minn.Stat. § 626.557, subd. 7(b) (1986) (a person required to report under the Vulnerable

---

**3.** Minn.Stat. § 169.09, subd. 3(a) states, in pertinent part:

[The driver] shall render reasonable assistance to any person injured in such accident.

Adult Act "who negligently or intentionally fails to report is liable for damages caused by the failure").

MULALLY, Judge (concurring specially).

I join in the special concurrence of Judge Nierengarten.

CRIPPEN, Judge, concurring specially.

I concur in the majority decision.

Appellant produced no evidence or offer of evidence showing negligence of respondent Lintel occurring after the fatal collision, or showing that Lintel's conduct contributed to the death of Shirley Gertken. The facts here do not present the question whether Lintel had a duty to assist Gertken pursuant to the mandate of Minnesota Statutes § 169.09, subd. 3(a) (Supp.1983). Moreover, the assertion of a statutory duty of care requires consideration of the duty as declared in the Good Samaritan Law, which arises only when a person "knows that another person is exposed to or has suffered grave physical harm." Minn.Stat. § 604.05, subd. 1 (Supp.1983). The evidence shows no knowledge of respondent Lintel as to Shirley Gertken's plight after the collision, or even his reason to know that she was in peril.

In addition, we are not at liberty to lightly disregard the trial court's decision at the time the trial began to limit the plaintiff's proof to the cause he first alleged, negligence leading to a collision. While the trial court must exhibit liberality toward the amendment of pleadings, its discretion to control the issues of the case is uniquely broad and cannot be readily set aside. *McDonald v. Stonebraker*, 255 N.W.2d 827, 830 (Minn.1977) ("In the absence of a manifest abuse of discretion, we will not reverse the trial court's actions in allowing or disallowing amendments."). In fact, if the trial court did not err in refusing the proposed amendment, the topic of post-collision duties need not be addressed here at all.