David L. LEACH, Trustee for the Heirs of Raye Anne Leach, decedent, and David L. Leach, individually, Appellant (C2–87–1173),

v.

ESTATE OF Sharon M. DAHL, Deceased, et al., Respondents,

Gary W. Deyo, et al., Appellants (C2–87–1173),

Laurel Ann Stroman and Darwin LeRoy Towne, Respondents.

Duane DAHL, as Trustee for the Heirs of Sharon M. Dahl, Deceased, Appellant (C3–87–1554),

v.

Laurel Ann STROMAN and Darwin LeRoy Towne, Respondents,

State Farm Mutual Automobile Insurance Company, Defendant.

Dawn KRALING as Trustee for the Heirs of Bradley Hart, Deceased, Appellant (C3–87–1196),

v.

Laurel STROMAN, et al., Respondents.

Lois MOORE, Appellant (C1–87–1195),

v.

Sharon DAHL, Deceased, By and Through Duane DAHL, surviving spouse, Laurel Ann Stroman and Darwin LeRoy Towne, Respondents,

Gary Deyo, et al., Appellants (C2–87–1173).

Barbara Ann EICKHOFF, et al., Appellants (C2–87–1173),

v.

ESTATE OF Sharon M. DAHL, Deceased, et al., Laurel Ann Stroman and Darwin LeRoy Towne, Respondents.

Sheila R. BUENGER, et al., Appellants
(C4–87–1174, C4–87–1966),

v.

ESTATE OF Sharon M. DAHL, Deceased,
et al., Laurel Ann Stroman and Darwin
LeRoy Towne, Respondents,

Gary Deyo, Appellant (C2–87–1173).

Annette KIEFER, Appellant
(C0–87–1284, C9–87–1963),

v.

Duane DAHL as Personal Representative
of the Estate of Sharon Dahl, et al.,
Laurel Ann Stroman and Darwin Le-
Roy Towne, Respondents.

Susan (McKenzie) HOVEY, Respondent,

v.

Duane DAHL as Personal Representative
of the Estate of Sharon Dahl, et al.,
Laurel Ann Stroman and Darwin Le-
Roy Towne, Respondents.

Joyce EVERY, et al., Respondents,

v.

Duane DAHL as Personal Representative
of the Estate of Sharon Dahl, et al.,
Laurel Ann Stroman and Darwin Le-
Roy Towne, Respondents.

Cindy FRANK, et al., Respondents,

v.

Duane DAHL as Personal Representative
of the Estate of Sharon Dahl, et al.,
Laurel Ann Stroman and Darwin Le-
Roy Towne, Respondents.

Nos. C2–87–1173, C4–87–1174, C1–87–
1195, C3–87–1196, C0–87–1284,
C3–87–1554, C9–87–1963 and C4–87–1966.

Court of Appeals of Minnesota.

Feb. 2, 1988.
Review Denied April 4, 1988.

Michael D. Klampe, Rochester, for David L. Leach, et al.

Peter C. Sandberg, Dunlap Keith Finseth Berndt & Sandberg, Rochester, for Estate of Dahl, et al.

Joseph J. Pingatore, Klampe Pingatore & Nordstrom, Rochester, for Gary W. Deyo, et al., Barbara Eickhoff.

Charles F. Angel, O'Brien Ehrick Wolf Deaner & Downing, Rochester, for Laurel Ann Stroman.

Lee L. LaBore, Lee L. LaBore & Assoc., Hopkins, for Darwin LeRoy Towne.

Mark G. Stephenson, Rochester, for Duane Dahl.

James M. Lehman, Mahoney Dougherty & Mahoney, Minneapolis, for Dawn Kraling.

David A. Shulman, Gartner Shulman & Erwin, Rochester, for Lois Moore.

William J. Ryan, Michaels, Seeger, Rosenblad & Arnold, Rochester, for Sheila R. Buenger, et al.

Robert R. Benson, Preston, for Annette Kiefer, Susan (McKenzie) Hovey, Joyce Every, et al., Cindy Frank.

Heard, considered and decided by RANDALL, P.J., and HUSPENI and STONE[*], JJ.

## OPINION

RANDALL, Judge.

On December 10, 1985, a multi-vehicle accident occurred on Highway 52 between Rochester and Marion Township in southern Minnesota. The accident resulted in numerous personal injury lawsuits and three wrongful death claims. The injured individuals and the personal representatives of the deceased sued Stroman, Towne, Dahl and Deyo.[1] The trial was bifurcated,

---

[*] Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

1. Several actions were filed creating four classes of plaintiffs:

with liability and damages to be separately tried.

At the end of the liability portion of the trial the jury returned a verdict of no liability. All appellants moved for JNOV or, in the alternative, a new trial. The trial court denied the motions. The injured parties appeal. We reverse and remand for a new trial as to respondent Stroman.

## FACTS

On the morning of December 10, 1985, a major storm left Highway 52 between Rochester and Marion Township completely covered with ice and snow. Various witnesses testified it was impossible to see the center line or distinguish the shoulder from the road. A line of cars was traveling in the southbound lane at a speed of approximately 35 miles per hour.

A car driven by witness James Schott was just ahead of respondent Laurel Stroman. Stroman testified she was traveling 35 to 37 miles an hour when the right tires of her car slid off the road and onto the shoulder. She did not immediately try to get back up on the highway. After traveling about "a block," Stroman determined that she would have to pull back up on the road because she was approaching a mailbox. She believed she would hit the mailbox if she did not pull her right tires back onto the road.[2]

As Stroman tried to pull her car up over the lip of the road to get her right tires back onto the roadway, she began to swerve. She skidded across the center line, into the oncoming lane. She knew the ditch on the left side of the road was a drop off, and she made a conscious effort to steer her car back over the center line toward the right side of the road. As she was coming back into her own lane, Stroman looked up and, for the first time, noticed Towne's semi approaching in the opposite lane. A witness testified the semi was "hogging the road." At one point, Stroman thought she would be able to avoid colliding with the semi, but could not. The bumper of the semi collided with the left rear quarter panel of Stroman's car. After colliding with Stroman's car, Towne's semi jackknifed and continued to slide in a jackknifed position.

Towne's semi collided head on with a commuter van owned by "Root River Riders." The van's driver, Sharon Dahl, and a van passenger, Raye Anne Leach, were killed. The remaining van passengers, Sheila Buenger, Alice Buenger, Annette Kiefer, Barbara Eickhoff, Susan Hovey, Joyce Every, Lois Moore, and Cindy Frank, were injured. A car driven by Gary Deyo then struck the semi, killing Bradley Hart, a passenger in the vehicle, and injuring Deyo and another passenger (passenger not a party to this suit).

Witness Rebecca Severson, whose car was between Stroman and the commuter van, managed to avoid the collision by pulling onto the shoulder. Witness Schott testified that the semi driven by Towne was over the center line as it approached the accident scene. Schott avoided colliding with the semi by pulling over to the right; however, he stopped and watched through his rear view mirror anticipating trouble.

Stroman testified that she had driven that portion of Highway 52 every day for three or four months prior to December 10. She knew there was a "lip" formed by the

(1) *Passengers of the commuter van:* The van passengers sued Dahl (the van driver), Towne (the semi driver), Deyo (a driver involved in the accident), and Stroman (the driver who skidded out of control and collided with Towne's semi).

(2) *Estate of Dahl.* The estate of Dahl commenced action against Towne and Stroman.

(3) *Estate of Hart.* The estate of Hart, a passenger in Deyo's vehicle, commenced action against Stroman and State Farm Insurance Company. State Farm brought Deyo and Towne into this action as third party defendants.

(4) *Deyo.* Deyo commenced action against Stroman and Towne. Claims brought by the van passengers against Deyo were voluntarily dismissed prior to trial. The injured passenger in the Deyo vehicle has not commenced an action. The parties in the various actions agreed to consolidate for trial as to the issue of liability. Damage issues were to be litigated in a separate proceeding.

2. Other evidence showed that the mailbox was several feet from the shoulder and she would not have hit it.

road and the shoulder at that point on the highway. Towne testified that he was in his own lane of traffic when he struck Stroman and that the collision with Stroman caused his semi to pull into the northbound lane and jackknife. He testified that the impact with Stroman knocked him on his side and disabled his steering mechanism. Testimony at the trial indicated that some of the tires on the right side of his semi had approximately $1/32$ inch tread. The Severson vehicle, traveling behind Stroman, was able to avoid a collision.

Sheila Buenger, a passenger in the commuter van, testified that the van was traveling a short distance behind the Severson vehicle, although her view was somewhat obstructed by the Severson vehicle and by her position in the van. Severson testified that she saw the semi just before it collided with the van and noticed the driver sitting behind the wheel. She also testified that Dahl pumped the brakes three times but, at least in Severson's opinion, Dahl "froze" right before impact with the semi.

Deyo testified that he was driving about 35 miles per hour, a short distance behind the van. He testified that his only opportunity to avoid the accident was to turn to the left, at which point he collided with the semi's right rear tires.

At trial, the plaintiffs tried to admit a video tape taken at the scene a few minutes after the accident by a local television station. The tape, among other things, showed victims lying in the snow, a deceased victim covered with a blanket, an emergency helicopter landing and taking off, and the emergency crew using a "jaws of life" tool to remove victims from the van. The tape contained an interview with Towne. After an initial viewing, the court refused to allow admission of the tape, finding it highly prejudicial and irrelevant. Appellants offered to edit the tape; however, after a second viewing the court again excluded it as prejudicial and irrelevant to liability, which was the only issue being litigated.

During the course of the trial, several items of evidence were admitted for illustrative purposes only, including an aerial photo, a cut away model of new and worn tractor tires, and several freehand drawings made by witnesses during their testimony.

While deliberating, the jury asked that the aerial photograph be brought into the jury room. The court denied the jury's request, and refused to allow any of the illustrative exhibits into the jury room.

The jury found that none of the respondents were negligent. Appellants moved for judgment notwithstanding the verdict (JNOV), or, in the alternative, a new trial. An earlier request for a *Schwartz* hearing was withdrawn.

## ISSUES

1. Did the trial court err by denying appellants' motion for JNOV or a new trial on the issue of Stroman's liability?

2. Did the trial court err by denying appellants' motion for JNOV or a new trial on the issue of Towne's liability?

3. Did the trial court err by denying appellants' motion for JNOV or a new trial on the issue of Dahl's liability?

4. Did the trial court err by instructing the jury to determine whether respondents were negligent "at the time of the accident?"

5. Did the trial court err by refusing to admit a videotape of the accident scene or by refusing to permit the jurors to take aerial photographs of the location into the jury room?

## ANALYSIS

*Standard of Review*

 The standard of review for JNOV is "whether there is any competent evidence reasonably tending to support the verdict." *Peppin v. W.H. Brady Co.*, 372 N.W.2d 369, 374 (Minn.Ct.App.1985) (citation omitted). A jury's verdict will be upheld unless the evidence is practically conclusive against the verdict and reasonable minds can reach only one conclusion. *Id.* (citation omitted).

A new trial should not be granted unless the verdict is so contrary to the prepon-

derance of the evidence as to imply that the jury failed to consider all the evidence or acted under some mistake or from some improper motive, bias, feeling or caprice, instead of honestly and dispassionately exercising its judgment. The trial court, having heard the testimony and observed the parties and witnesses, is in a better position than this court to determine whether the damages were given under the influence of passion and prejudice, and in the absence of a clear abuse of that discretion its action will not be reversed.

*LaValle v. Aqualand Pool Co. Inc.*, 257 N.W.2d 324, 328 (Minn.1977) (citation omitted). An order denying a motion for JNOV is nonappealable. *Gertken v. Farmers Elevator of Kensington*, 411 N.W.2d 550, 553 (Minn.Ct.App.1987); *State v. Hagen*, 382 N.W.2d 556, 558 (Minn.Ct.App.1986). If the arguments raised in the new trial motion cover essentially the same area, this court may review the issues. *Gertken*, 411 N.W.2d at 553; *Hagen*, 382 N.W.2d at 558.

## I.

### Claims Against Stroman

 Appellants argue that Stroman was negligent as a matter of law on several different grounds. Appellants' arguments include that Stroman negligently operated a vehicle in violation of Minn.Stat. §§ 169.-14, subd. 1 (driving a vehicle faster than is reasonable and prudent under the existing conditions); 169.14, subd. 3 (drivers shall reduce their speed when special hazards exist); 169.18, subd. 1(1) (vehicles shall be driven upon the right half of the roadway when overtaking and passing); and 169.18, subd. 1(2) (1986) (when the right half of a roadway is closed to traffic while under construction or repair).

In a post-trial memorandum accompanying the denial of appellants' motions, the trial court stated:

[t]he jury also heard testimony about the terrible road conditions—the snow and ice cover, the inability to distinguish the shoulder from the road or the center line—as well as Stroman's own testimony about how she responded to the lip on

the road. In fact, the testimony indicates that she was "out of control" and in the wrong lane as the result of skidding on ice. In short, the jury verdict as it relates to Stroman clearly is not manifestly or palpably contrary to the evidence.

The court concluded the jury could reasonably have found that Stroman rebutted any prima facie case of statutory negligence claimed under Minn.Stat. § 169.96 (1986). The court relied on JIG II, 300 G–S, which states:

The fact that a motor vehicle has skidded, standing alone, is not evidence of negligence. If the skidding could have been prevented by the use of reasonable care, then it is evidence of negligence.

We agree that JIG II, 300 G–S, was properly submitted to the jury, and that normally appellate courts are reluctant to interfere with a fact finder's assessment of negligence. Recently this court affirmed a jury finding of no negligence on the part of a driver in a case involving dangerous road conditions and a car crossing the center line. *See Gertken*, 411 N.W.2d at 554.

However, here appellants argue that despite the great deference given to a jury finding of negligence (or, in this case, no negligence), a complete and detailed list of Stroman's driving conduct and her movement across the road, which led to the first collision, and, undeniably, to the others, is such that the trial court should have stepped in and found Stroman negligent as a matter of law. We agree.

Appellants argue that no reasonable mind could have found as the jury did, and that no evidence supports the jury's conclusion that Stroman properly exercised her duty of due care in the operation and control of her vehicle. They claim the jury did not understand the law as it applied to the facts, and that, because the verdict is contrary to the evidence, the trial court erred by denying the motions for JNOV or a new trial.

Appellants argue that in each case cited by respondent in which the trial court did not grant JNOV, the drivers who lost con-

trol were confronted with an emergency situation, a sudden unforeseeable event.

After reviewing the record and transcript, we agree with appellants that the jury could not reasonably have found, based on the totality of the evidence, that Stroman was not at least slightly negligent.

The roads were covered with ice, and Stroman was driving 35 to 37 mph because she knew the roads were slippery. Stroman had driven Highway 52 at this spot practically every other day for months, and knew the layout and potential hazards of the road. Stroman testified she was hugging the right side of the road when her tires went onto the shoulder. Stroman knew there was a lip from the shoulder onto the road. She slipped off the road on to the shoulder, but then continued to drive about 35 mph as she attempted to bring her car back up onto the roadway.

Stroman admitted that she went out of control as she steered her car from the shoulder back onto the highway, and, while out of control, crossed the center line into the semi's lane of traffic. A witness testified that Stroman admitted over-compensating when attempting to bring her car back onto the road. Stroman fishtailed across the center line, then, not wanting to go off the road on the left side because of a steep ditch, steered her car back across the center line toward her own lane. Her coming back toward her own lane preceded the collision with Towne's semi; and Stroman testified that she did not see the truck until she was returning into her own lane, at which time she thought a collision was inevitable.

As to Stroman, we find that the combination of her actions and the totality of her driving conduct, taken as a whole, constitute at least "some" negligence. The jury verdict of no negligence as to Stroman is against the weight of the evidence. We remand for trial on liability, the only issue before us, with instructions to the trial court to submit to the jury the question of causation as to Stroman. On retrial, the court, on its own, should mark the special

interrogatory affirmative as to Stroman's negligence.

## II.

*Claims Against Towne*

Appellants argue that Towne was prima facie negligent for violating laws and regulations requiring at least $\frac{4}{32}$'' tread on five of his tires. Trooper Farrington of the Minnesota. Highway Patrol measured the semi's tire tread, and testified that several tires on the truck had less than $\frac{1}{32}$ inch tread. This issue was fully developed for the jury, and we do not disturb the finding of no negligence. *See Lamb v. Jordan,* 333 N.W.2d 852, 855 (Minn.1983) (evidence must be viewed to support the verdict, and the reviewing court may not weigh evidence or evaluate witnesses).

■ Appellants claim Towne also violated Minn.Stat. §§ 169.14, subd. 1 (driving too fast for conditions) and 169.18, subd. 1(1) (crossing the center line). *Johnson v. Reinhard Bros. Co. Inc.,* 205 Minn. 212, 214, 285 N.W. 536, 537 (1939). We find the trial court properly affirmed the jury finding of no negligence as to Towne. Unlike Stroman, Towne's driving conduct and crossing the center line was the subject of disputed oral testimony. Some witnesses testified they thought Towne was traveling too fast for road conditions and that he was across the center line. Towne denied those allegations and testified he was in his own lane and driving at a safe speed for the road conditions. The testimony of some witnesses was inconclusive as to whether Towne was across the center line. The trial court did not abuse its discretion in affirming the jury findings as to Towne.

## III.

*Claims against Dahl*

■ The van passengers claim the determination that Dahl was not negligent is against the weight of the evidence. They claim Dahl was aware of the road condition and had experienced some loss of control of the vehicle prior to the accident. They also point to testimony of passengers of the van

that Dahl did not brake or turn to the right to avoid the accident, and that she "froze."

As with Towne, we do not disturb the jury findings as to Dahl. Again, unlike Stroman, there are no on-the-record admissions by Dahl, who died in the collision. There were only general and subjective allegations of negligence against Dahl. The evidence could have supported a finding of negligence, had the jury come to that conclusion, but it was also within the province of the jury to find no negligence by Dahl. Here, reasonable minds could have reached the conclusion Dahl was not negligent. *See Peppin,* 372 N.W.2d at 374.

## IV.

### Jury Instructions

■ Appellants argue that the jury misunderstood the special verdict interrogatories as to respondents' negligence. Each question was worded in the same language:

Was defendant [Laurel Stroman] negligent in the operation of the vehicle [she] was driving *at the time of the accident*?

(emphasis added). Appellants point out that the jury, after receiving the general instructions and before retiring, asked the court to define "at the time of the accident." The trial court declined to do so, and informed the jury to take the matter up among their recollective judgment to determine what that would be. Appellants argue that with the length of time and series of events surrounding Stroman's driving conduct prior to the actual impact of her fender and Towne's bumper, the instruction was misleading and inferred to the jury that it could only consider Stroman's conduct at the time of the actual impact with the truck, and not the series of events that brought her into contact with the truck. We agree. With an accident this complex, and of this magnitude, involving multiple vehicles in a chain reaction, the jury should have been instructed in some fashion that it could consider all of Stroman's driving conduct it considered relevant.

The instruction of the trial court, standing alone, might not have constituted reversible error. Since we are remanding for a new trial on the issue of causation as to

Stroman, we ask the trial court to reformulate that jury instruction so it is clear that all of Stroman's driving conduct can be considered.

## V.

### Exclusion of Video Tape

■ Appellants also claim the trial court erred in excluding from evidence the video tape made at the accident scene, and by failing to allow the jury to take into the jury room aerial photographs offered for illustrative purposes. Appellants argue that the video tape would aid the jury in its deliberations, and presented an accurate depiction of the accident scene. It also contained an interview with Towne in which Towne allegedly made damaging admissions. Respondents argue that the tape is not relevant because the time of filming is unknown, the film was shot over an extended period of time, and most, if not all, of the film would go to the issue of damages, not liability. The decision to exclude the tape was within the court's discretion, and we will not disturb it on appeal. *Jenson v. Touche Ross & Co.,* 335 N.W.2d 720, 727 (Minn.1983).

Appellants contend the court erred by keeping the illustrative exhibits out of the jury room. We find no error in this ruling.

### Attorney Misconduct

Appellants raise issues of attorney misconduct. We have reviewed the record, and find that none of the remarks complained of by appellants rise to the level of such prejudice that a new trial on this issue is warranted.

## DECISION

The trial court erred by refusing to grant appellants a new trial or JNOV with respect to the issue of Stroman's negligence. The trial court did not err by refusing to grant JNOV or a new trial with respect to Towne's negligence. The trial court did not err by refusing to grant JNOV or a new trial with respect to Dahl's negligence. The instructions to the jury to determine whether respondents acted negligently "at the time of the accident" did not, standing alone, constitute reversible error as to all respondents. The trial court did not err by

refusing to admit evidence consisting of a video tape of the accident scene, and by refusing to permit jurors to take into the jury room evidence that had been used only for illustrative purposes.

Affirmed in part, reversed in part and remanded.

HUSPENI, concurring in part, dissenting in part.

HUSPENI, Judge (concurring in part, dissenting in part)

I concur in sections II, III, IV and V of the majority's analysis. However, I believe that under the facts of this matter the question of Stroman's negligence was for the jury to determine. *Gertken v. Farmers Elevator of Kensington, Minn., Inc.*, 411 N.W.2d 550, 554 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Oct. 28, 1987). Whether the trial court committed reversible error when it failed to answer the jury's inquiry regarding the phrase "at the time of the accident" is a close question. However, I conclude I must join the majority in its analysis of the impact of this issue standing alone.

I would affirm the trial court in all respects.