**Steven B. GORECKI, Respondent,**

v.

**COUNTY OF HENNEPIN, DEPT. OF PUBLIC WORKS, et al., Appellants.**

**No. C1–89–391.**

Court of Appeals of Minnesota.

Aug. 1, 1989.

Review Denied Sept. 27, 1989.

Robert J. Brenner, Robert J. Brenner & Associates, Minneapolis, for respondent.

Thomas L. Johnson, Hennepin Co. Atty., Michael B. Miller, Asst. Co. Atty., Minneapolis, for appellants.

Considered and decided by NORTON, P.J., and RANDALL, and MULALLY *, JJ., without oral argument.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 2.

## OPINION

### EDWARD D. MULALLY, Judge.

A jury found appellant Hennepin County 55% contributorily negligent for the injuries respondent Steven B. Gorecki sustained when his pickup truck went over a snowbanked bridge railing and landed on the thoroughfare below. The district court denied Hennepin County's post-trial motion for JNOV or, in the alternative, a new trial, and the county appeals. We affirm.

## FACTS

On December 30, 1981, at approximately 8:00 p.m., Gorecki was driving a pickup truck east on Hennepin County Highway 62 (Crosstown). As he traveled across the bridge overpassing Minnesota Trunk Highway 77 (Cedar Avenue), he attempted to change lanes. In doing so, he encountered icy conditions and lost control of his vehicle. The truck slid up and over the approximately 8½ feet wide snow bank next to the bridge's railing and landed upside down in the east lane of northbound Cedar Avenue.

Officer Ronald Quittem was present at the scene of the accident and subsequently made out a report.[1] He testified he reported that Gorecki had been drinking prior to driving. Officer Quittem formed this opinion from Gorecki's loss of control of his vehicle, the pungent odor of beer coming from the vehicle and the beer cans scattered on the highway's surface around the vehicle. However, Officer Quittem testified that he did not charge Gorecki with DWI. He was advised by the Richfield city attorney that the factual basis for probable cause was insufficient, even though Gorecki's blood alcohol level was .08 when he was admitted to the hospital.

John Kirtland, Hennepin County's highway maintenance superintendent, supervised the maintenance and snowplowing of Hennepin County's highways, including the Crosstown bridge over Cedar Avenue from 1952 through 1986. He testified that the county remodeled the Crosstown bridge over Cedar Avenue in the mid–1970's and installed New Jersey crash barriers along the bridge's railings. The New Jersey barriers were especially designed to deflect striking vehicles back onto the highway's surface.

Kirtland also testified that in 1979 'Hennepin County adopted and implemented a policy that snowplow operators were not to push snow off bridges onto thoroughfares below. Instead, the snow plow operators were to push the snow away from the highway's traveled surface as far as they could without causing any spillage off the bridges. This policy remained in effect during 1981. (Ralph Engebrit, one of the two snowplow operators who plowed the Crosstown highway at night in 1981, testified that he and other snowplow operators followed the county's snowplowing policy in 1981 when they plowed the Crosstown bridge over Cedar Avenue. Because the snow was not pushed over the bridge's barriers, Engebrit testified, a snowbank accumulated along the entire railing of the bridge.)

Kirtland further testified that in 1981 he was aware that snowbanks built up along the edges of the county's bridges. He also testified the snowbanks were not removed from vehicle-only bridges, as was the Crosstown bridge over Cedar Avenue, because the snowbanks were never known to be a hazard.

While Kirtland was superintendent, accidents occurring on Hennepin County's 1400 lane miles of highway were routinely reported to him in the course of his work. Kirtland testified that, until his retirement, he never learned of any accidents similar to Gorecki's occurring on any Hennepin County bridge. He testified that the county's records indicate that on any given day in 1981, between 39,000 and 58,000 vehicles traveled across the Crosstown bridge over Cedar Avenue.

Kirtland additionally testified that in 1981 it was feasibly possible for Hennepin

---

1. The limited record on appeal does not reveal whether Quittem was a city, county or state peace officer.

County to remove snowbanks from bridges and that it was actually done on bridges having pedestrian crossings, i.e., sidewalks. (A motor patrol would pull the snow back onto the roadway and then a loader would load it into trucks that would haul it away.) Kirtland testified that the physical size of the county's facilities, i.e. trucks and man-power, would not have limited the snow removal, but only the timing of the snow removal.

Gorecki commenced this suit against the State of Minnesota and Hennepin County for personal injuries sustained during the accident. By special verdict, a jury found no negligence on the part of the State, but found Hennepin County negligent in not removing the snow from the Crosstown bridge over Cedar Avenue. The jury also found Gorecki to have been negligent in the operation of his motor vehicle as he drove it over the bridge. The jury deter-mined that both the county's and Gorecki's negligence was a direct cause of Gorecki's injuries. The jury apportioned the county's fault at 55% and Gorecki's at 45%. The trial court subsequently found such appor-tioned negligence as being the proximate cause of the injuries. Pursuant to Minn. Stat. § 604.01, subd. 1 (1986), the trial court reduced the jury's specially found damages for Gorecki from $90,000 to $40,-000. The county's post-trial motions were denied and it appeals from the order deny-ing its motion for a new trial.

### ISSUES

1. Are the county's decisions not to plow snow over the bridge and/or not to remove snow from the bridge's railing dis-cretionary acts so as to immunize the coun-ty from tort liability?

2. Did the trial court err in denying a new trial?

### ANALYSIS

#### I

Hennepin County contends the trial court erred in denying its JNOV motion. On appeal, the county maintains that it is im-mune from liability for damages resulting from its snowplowing and snow removal decisions. We, in part, disagree.

■ A. When the issues addressed in a JNOV motion are essentially the same as those presented in a new trial motion, from which the appeal is properly taken, as they are here, appellate review of the order de-nying the JNOV is proper. *State v. Ha-gen*, 382 N.W.2d 556, 558 (Minn.Ct.App. 1986); *see also* Minn.R.Civ.App.P. 103.04.

■ Unlike a motion for a new trial which "presents a factual question where the reviewing judge may properly weigh the evidence," a motion for JNOV presents the court with a clear question of law. *Siegler v. Connor*, 396 N.W.2d 612, 616 (Minn.Ct.App.1986). Thus, in reviewing the district court's denial of a motion for JNOV, "the facts are [to be] considered in the light most favorable to the verdict." *B.F. Goodrich Co. v. Mesabi Tire Co.*, 430 N.W.2d 180, 182 (Minn.1988).

B. The legislature waived county governments' tort immunity by enacting tort liability legislation. 1963 Minn. Laws ch. 798, § 2, codified at Minn.Stat. § 466.02 (1988). However, an exception to county liability exists for "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (1988).

The discretionary function immunity pro-vided to county governments is virtually identical to that statutorily afforded to the state. *See* Minn.Stat. § 3.736, subd. 3(b) (1988) (prescribing that the state is not liable for any "loss caused by the perform-ance or failure to perform a discretionary duty, whether or not the discretion is abused"). Consequently, we determine, and the parties concede, that the cases analyzing state conduct under Minn.Stat. § 3.736, subd. 3(b), are equally applicable to county conduct under Minn.Stat. § 466.03, subd. 6.

■ In determining whether particular conduct is protected, the reviewing court is to interpret the discretionary function ex-ception narrowly and is to focus on the

purpose underlying the exception. *Holmquist v. State*, 425 N.W.2d 230, 231 (Minn. 1988). "The discretionary function exception is designed to assure that the courts do not pass judgment on policy decisions entrusted to coordinate branches of government." *Id.* Thus, the supreme court has determined that "[t]he exception's application is limited to decisions which involve the balancing of competing public policy considerations." *Id.* at 232.

"As an aid to determining whether particular conduct is protected," the supreme court has "distinguished planning level decisions from those at the operational level." *Id.* "Planning level decisions are those involving questions of public policy, that is, the evaluation of factors such as the financial, political, economic, and social effects of a given plan or policy. Operational level decisions, on the other hand, involve decisions relating to the ordinary day-to-day operations of the government. In applying this distinction, the temptation to engage in a mere labeling approach must be resisted." *Id.* (citations omitted).

To determine whether the discretionary function exception is applicable to Hennepin County's decisions not to plow snow over bridges above thoroughfares and not to remove snow from bridges restricted to vehicle use only,

> [t]he question is not whether the * * * [county's] conduct resulted in a condition posing an unreasonable risk of harm; it is whether the conduct consisted of planning or policymaking decisions (protected) or operational level decisions (unprotected). To hold otherwise would effectively nullify the discretionary function exception because a claim of loss caused by the performance or failure to perform a discretionary duty frequently rests on the allegation that the State [or its political subdivisions] created a hazardous condition.

*Id.*

"The adoption of standards or regulations is considered a protected planning level activity because it almost inevitably requires the balancing of policy considerations." *Id.* at 234 (determining that state's

promulgation of the Minnesota Manual on Uniform Traffic Control Devices was a planning level decision because formulation of the manual "entailed the evaluation of many policy considerations, such as safety, climate, driving behavior, and uniformity with other states, as well as the financial implications of compliance or nonconformity with the national Manual.").

Where employees follow the policy decision adopted by the governmental entity, "a challenge to their conduct is merely a challenge to the policy." *Nusbaum · v. Blue Earth County*, 422 N.W.2d 713, 723 (Minn.1988). As a result, a plaintiff's "claim * * * is precluded because the courts or juries should not be allowed to second-guess the policy decision." *Id.* (where state engineers merely followed the State's adopted manual on Uniform Traffic Control Devices, the court refused to second-guess the policy decision and barred plaintiff's challenge to their conduct).

When the governmental entity fails to present any evidence that the negligent conduct complained of resulted from a broad policy decision or involved a balancing of policy objections, the plaintiff's challenge will not be barred by the discretionary function exception. *Id.* (determining that plaintiff's challenge to state's act of placing an "END 45 MILE SPEED" sign 1,000 feet south of sharp curve not barred by discretionary function exception where state presented no evidence that placement of "this particular sign was mandated by a policy consideration."). Moreover, where a plaintiff challenges a governmental employee's judgment that was based on certain factors not involving the formulation of public policy, in the absence of any evidence that it involved a balancing of policy objectives, the government is not afforded discretionary immunity for that professional judgment. *See id.* (state traffic engineer's judgment in determining a safe speed zone did not involve formulation of public policy but rather unprotected professional judgment).

C. Gorecki challenges the county's conduct in (1) negligently plowing snow so that a snowbank accumulated against the

bridge's crash barrier and, thereafter, in (2) negligently failing to remove the snowbank.

■ 1. On October 23, 1979, Kirtland notified all maintenance personnel by written memorandum of Hennepin County's adoption of the following policy:

SNOWPLOWS MUST REDUCE SPEED AND TAKE ALL PRECAUTIONS NECESSARY TO PRECLUDE SNOW/ICE [FROM] BEING THROWN OR PUSHED OVER BRIDGES INTO THOROUGHFARES BELOW.

The memorandum states that the policy was adopted because of the "liability involved as well as the poor image and public relations that results" when vehicles are damaged "from snow/ice being thrown from overhead bridges by our snowplows." In the 1978–79 snowplowing season, the county had received three claims for damages to vehicles from such snowplowing activities.

The county's decision to adopt the policy precluding snow from being thrown from bridges clearly involved the evaluation of financial, social and political factors. Therefore, the adoption of the policy was a protected planning level decision.

Engebrit's testimony reveals that in 1981 he and the other snowplow operators did not plow snow over bridges, including the Crosstown bridge over Cedar Avenue, but instead formed snowbanks along the bridge's railings. This testimony reveals that Engebrit and other county snowplow operators merely followed the policy decision adopted by the county. A challenge to their conduct in creating the snowbanks against the bridge railings amounts to a challenge to the protected policy decision adopted by the county. Consequently, Gorecki's claim, based on the county's negligence in plowing snow, is barred by the discretionary function exception.

■ 2. Although Kirtland testified that the county had a policy of clearing the snowbanks from bridges with adjacent sidewalks, there is no evidence that the county's decision not to remove snowbanks from bridges without sidewalks was mandated by a policy adopted from the evaluation of financial, political, economic, and social factors.[2]

Kirtland testified that the decision not to remove snowbanks from bridges restricted solely to vehicle usage had nothing to do with equipment or manpower that the county had at that time. He testified that snow removal from vehicle-only bridges had "never been done" because it was not perceived by the county as being a "known danger, problem, or hazard." An employee's professional judgment not involving policy considerations is not protected by the discretionary function exception. Accordingly, Gorecki's challenge to the county's failure to remove the snowbank from the bridge is not barred. In light of the jury's having found the county was negligent in this regard, the trial court did not err in denying the county's JNOV motion.

II

■ On appeal, the county alternatively argues it is entitled to a new trial. The county claims that (1) admissible evidence was excluded, (2) jury instructions warranted by the evidence were refused, and (3) misstatements of law and fact were made in counsel's opening and closing statements.

An order denying a new trial is an appealable order. Minn.R.Civ.App.P. 103.03. However, a new trial will not be granted unless

the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all the evidence or acted under some mistake or from some improper motive, bias, feeling or caprice, instead of honestly and dispassionately exercising its judgment.

*LaValle v. Aqualand Pool Co., Inc.*, 257 N.W.2d 324, 328 (Minn.1977). Having made a thorough review of the record, we cannot say that the jury was prejudiced

2. These facts distinguish this case from our recent decision in *Hennes v. Patterson*, 443 N.W.2d 198 (Minn.Ct.App. July 25, 1989) where the State of Minnesota had adopted a protected policy prioritizing snow removal from state highway bridges.

from the errors assigned by the county or failed to properly exercise its charge. This is especially true in light of the jury's finding that Gorecki was 45% at fault. Rather, we determine that the county's remaining claims are without merit. Accordingly, the trial court did not err in denying the county's motion for a new trial.

## DECISION

The order of the trial court denying the county's post-trial motions for JNOV or a new trial is affirmed.

Affirmed.