0087

SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES and Katie Lee
Marlowe, Respondents, v. William BACOT, Appellant.

(313 S. E. (2d) 45)

Court of Appeals

*Steve Wukela, Jr.,* Florence, *for appellant.*

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. Raymond G. Halford* and *Asst. Attys. Gen. Clifford O. Koon, Jr.,* and *Preston F. McDaniel,* Columbia, *for respondents.*

Feb. 21, 1984.

SANDERS, Chief Judge:

This is an action by respondents South Carolina Department of Social Services and Katie Lee Marlowe, the mother of a minor child, against appellant William Bacot, alleging him to be the child's father. The family court judge admitted certain blood test results and expert testimony in determining Bacot to be the father. The parties stipulated the only questions on appeal are the admissibility of the blood test results and the supporting expert testimony. We affirm.

Dr. Emily G. Reisner testified she is the director of the HLA Laboratory of Duke Hospital Blood Bank. As such, she super-

vises the testing and performs the statistical analysis of the results of both red blood cell tests and Human Leucocyte Antigen (HLA) tests relating to white blood cells. Dr. Reisner is an immunologist with a specialty in serology, the study of inherited markers on various types of blood. Beyond calculus and various college-level math courses, she has taken nine hours of statistics. She has also received on-the-job training in this area and has collaborated with statisticians in preparing a layman's version of the statistical analysis used with HLA tests.

At the time of her testimony, Dr. Reisner had published a total of nineteen articles, the most recent two concerning blood tests in genetic analysis. She had a total of eleven years' postdoctoral experience as a faculty member of Duke University, researching and working with the HLA blood test. During the three previous years, she had conducted or supervised approximately 554 tests in 184 cases of disputed paternity. The same figures apply to the number of red blood cell tests she had conducted or supervised.

Dr. Reisner further testified that while her testing methods basically exclude men from parenthood, the analysis used consists of two steps. The first is an examination for an exclusion. If none is found, the likelihood of paternity is then computed. According to Dr. Reisner, the HLA test is the single biggest factor in the analysis for exclusionary purposes.

Dr. Reisner described the various red blood cell tests she had personally performed on the blood samples of William Bacot, Katie Marlowe, and the child, along with the results obtained from each. Combined, these tests exclude approximately 60 percent of wrongly accused men. Dr. Reisner also described the HLA tests she performed on the white blood cell samples. Alone, these tests revealed a 95.9 percent probability William Bacot "could be" the father. The combination of the red and white blood cell tests resulted in a 97.7 percent likelihood of Bacot's paternity, as opposed to a 2.3 percent likelihood a random man could be the father. Dr. Reisner testified that all the tests she used are generally recognized and accepted by the medical profession as being reliable and accurate.

Both the test results and Dr. Reisner's testimony were admitted into evidence, over objection. In his order, the trial judge found Dr. Reisner is an "eminently qualified expert in the performance and analysis of Human Leucocyte Antigen (H.L.A.) and red cell blood tests in disputed paternity matters." He also found the HLA blood test, when properly performed by qualified experts, constitutes relevant and probative evidence in establishing the paternity or non-paternity of an alleged father.

In addition to the testimony of Dr. Reisner, Katie Marlowe testified Bacot is the father of her son and was the only man with whom she had sexual intercourse at or near the time of conception. Testimony by other witnesses confirms the social relationship which existed between the parties at that time. There was also evidence the parties had opened a joint checking account during the pregnancy (although the purpose of that account was disputed) and that Bacot took Ms. Marlowe to the hospital when she was ready to deliver.

We first address the admissibility of the blood test results. Bacot basically argues the tests are exclusionary only and should not be admitted to prove paternity. He also argues the results indicating he "could be" the father have no probative value because no legislative guidelines have been set from which to judge the results. Bacot speculates the trial judge allowed the HLA blood test results to raise an irrebuttable presumption and used them as proof certain that he is the father. The Department urges South Carolina should align with the majority of states who now allow blood test results for purposes of inclusion and exclusion.

In *State v. Newton*, 274 S. C. 287, 262 S. E. (2d) 906 (1980), our Supreme Court, while not reaching the issue of admissibility of expert scientific testimony, noted the reliance of other jurisdictions on the standards set forth in *Frye v. United States*, 54 App. D. C. 46, 293 F. 1013 (1923). *Frye* holds expert testimony is admissible when underlying scientific principles have been sufficiently established to have gained general acceptance in the particular field.

Evidence is relevant if it tends to establish or to make more or less probable some matter in issue upon which it directly or indirectly bears. *Associate Management, Inc. v. E. D. Sauls Construction Company*, 279 S. C. 219, 305

S. E. (2d) 236 (1983). Evidence which assists in arriving at the truth of the issue is relevant and admissible unless otherwise incompetent. *Toole v. Salter*, 249 S. C. 354, 154 S. E. (2d) 434 (1967). The admission of evidence is largely within the discretion of the trial judge, but an abuse of that discretion amounting to an error of law warrants intervention by the reviewing court. *North Greenville College v. Sherman Construction Co., Inc.*, 270 S. C. 553, 243 S. E. (2d) 441 (1978).

While there appears to be a split of authority on this question in other states, in our opinion the better view is to allow blood test results, although exclusionary in nature, to be admitted into evidence as tending to prove paternity. We therefore hold that where blood test results indicate a man is probably the father of a child, they are admissible as evidence of paternity. However, we further hold such tests must be supported by both competent expert testimony and other independent evidence tending to establish paternity. Finally, we hold this evidence and testimony, once admitted, is not necessarily conclusive of paternity but rather establishes a prima facie case subject to rebuttal. There is an unfortunate trend in our society to rely on science and technology to provide an easy and absolute answer to every question. For this reason, we would caution that the results of blood tests once received into evidence should not be viewed as absolutely determinative of the issue of paternity. Instead, they should be carefully weighed by the trier of fact in every case along with the other evidence before the court. It is after all the sole responsibility of the court to make the ultimate decision on this issue based on all the evidence before it. This duty should not and cannot be delegated *de facto* to a scientist, statistician or anyone else. The record before us in this case does not reflect that the trial judge did this here.

Results of the blood tests performed here revealed a 97.7 percent likelihood of paternity. These blood test results were supported by the expert testimony of Dr. Reisner. There was also further independent evidence, previously discussed, tending to establish paternity.

We are then left with the second question raised by Bacot of whether the trial judge erred in qualifying Dr. Reisner as a competent expert in the performance and analysis of the blood tests here.

Qualification of a witness as an expert and the admissibility of her testimony on a fact in issue are matters largely within the discretion of the trial judge. *Prince v. Associated Petroleum Carriers*, 262 S. C. 358, 204 S. E. (2d) 575 (1974). In light of Dr. Reisner's professional background and experience, we find no abuse of discretion in her qualification as an expert.

For these reasons,the order of the trial judge is

Affirmed.

GARDNER and BELL, JJ., concur.