454 So.2d 482 (1984)
Thomas E. GRIMSLEY
v.
Virginia Ann Stines (a/k/a Steins) TYNER, et al.
No. 54276.
Supreme Court of Mississippi.
July 18, 1984.
Rehearing Denied August 22, 1984.
Robert F. Drake, Drake & Graben, Hattiesburg, for appellant.
G. Gerald Cruthird, Smith, Smith, Tate, Stuart & Cruthird, Picayune, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and SULLIVAN, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
Thomas E. Grimsley filed a petition in the Chancery Court of Pearl River County, Mississippi, for filiation, seeking to have himself declared the natural father of Charles Thomas Grimsley, rights of visitation with the minor child, and for the court to set a reasonable amount of contribution by him for support and maintenance of the child. Virginia Ann Stines (a/k/a Steins) Tyner filed a motion for jury trial, which was granted. The chancellor appointed Honorable R.I. Prichard, III, Circuit Judge of the Fifteenth Circuit Court District of Mississippi, Special Master, and transferred the cause to Judge Prichard's circuit court for the trial by jury.
The jury returned a verdict finding that Thomas E. Grimsley is not the natural father *483 of Charles Thomas Stines, and Judge Prichard filed his report as Special Master with the Chancery Court of Pearl River County. That court entered a decree approving, ratifying and affirming the report of the Special Master and decreed that Thomas E. Grimsley is not the natural father of Charles Thomas Stines. From that decree, Grimsley has appealed to this Court and has assigned seven errors in the trial below.
Five of the assigned errors state that the lower court erred in overruling appellant's motion for judgment notwithstanding the jury verdict in that the evidence did not sustain a verdict on behalf of appellee, or, in the alternative, that the verdict was contrary to the overwhelming weight of the evidence. Those five assignments of error will be considered together.

Facts
At the time of the trial on October 2, 1981, appellant was thirty-three years of age and appellee was thirty-eight years of age. They met in 1973, lived in the same neighborhood and, subsequently, began a sexual relationship. The child, Charles Thomas Stines (Charlie), the subject of this controversy, was born July 8, 1977, in Slidell Memorial Hospital, Slidell, Louisiana. The birth certificate issued for the child did not indicate the name of the father, and on February 9, 1979, it was altered to reflect Thomas E. Grimsley as Charlie's father. At the time of the trial, appellee had been married to Hosie Bee Parker for approximately two years and one child, Hosie Bee Parker, III, age 13 months, was born of the marriage. Previously, she was married to one Ralph Tyner for approximately six or seven years and Tonette Ann Tyner, age 18 years, is a child of that marriage.
Other than the above facts, the versions of appellant and appellee directly contradict each other on material points. According to appellant, he was living with appellee and engaging in sexual intercourse with her during 1976, more particularly in the summer and autumn, which was the period when Charlie was conceived. Also, he stated that he paid bills; contributed to the hospital expenses, even though Medicaid paid most of the amount; agreed with appellee that the child's birth certificate be altered, and appellant's name indicated as the father of the child; that they executed a sworn agreement to the effect that appellant was the father of the child; that he would contribute $100.00 per month for the support of the child; and that he would not interfere with custody rights until the child became 18 years of age.
Appellee testified that she did not have sexual relations with appellant during the summer and autumn of 1976, the period of conception; that she had been going with one James Arthur Hale since 1973, and had sexual relations with him three or four times a week for a period of seven or eight years, until he was killed in an automobile accident September 6, 1978, and that James Arthur Hale was the father of Charlie; and that he was the only person with whom she engaged in sexual relations during the period when Charlie was conceived.
For the purpose of this decision, it will not be necessary to state the facts of the case further insofar as the testimony of the parties and witnesses is concerned. The testimony was so highly contradictory and hopelessly different that the factual issue could only be resolved by the jury. If there were no other physical or documentary facts to shed light on the sole issue involved, viz, the paternity of the child, the verdict of the jury and judgment of the court would have to be affirmed.

Expert and Documentary Evidence
On October 23, 1978, appellant and appellee contacted a lawyer, went to his office, and obtained his assistance in preparing proper papers acknowledging appellant to be the father of the child and obtained an alteration of the birth certificate to so indicate. On that date, appellant and appellee each swore to and signed an acknowledgment of paternity setting out that Thomas E. Grimsley is the father of Charlie. Also, on October 23, 1978, appellant and appellee entered into a sworn agreement to the effect *484 that the child's name would be changed to Charles Thomas Grimsley, that Thomas E. Grimsley, father of the child, pay $100.00 per month for child support until the child reaches the age of 18 years, that Thomas E. Grimsley should have reasonable visitation rights to see said minor child; that appellee would have permanent custody of said child; and that appellant would not take any action to change custody until the child attained the age of 18 years. [See Appendix].
Dr. Leslie Ray Bryant, Jr., was agreed upon by the parties as an expert to conduct paternity study and blood tests of the parties and the child and was appointed by the court to make the examination and study. He conducted the tests at the Southern Baptist Hospital blood bank and found no exclusion of paternity for appellant, based upon the red blood cell testing. The most advanced system of testing for paternity (the HLA testing) was used, and, based on that testing, Dr. Bryant found that appellant could not be excluded as the father of the child. The result of his study as reflected in the abstract follows:
My procedure, if there is no exclusion based on the red blood cell testing procedures, is to develop a mathematical calculations based on the HLA testing to produce a "plausibility" of paternity. However, this "plausibility" of paternity is not based on HAL testing alone, but is based on the red blood cell testing and the white blood cell testing. All the testing resulted in a paternity index of 236 to 1. The recognized authority in this area, Paternity Testing by the American Association of Blood Banks, considers 20 to 1 as "strong evidence" of paternity. Converting the 236 to 1 index into a percentage equates to a 99.6% plausibility of paternity, which is labeled as "paternity being extremely likely."
The "plausibility" of paternity figure of 99.6% can be described as being either "strong evidence" or "extremely likely." The plausibility of paternity is based upon a ratio of combined probabilities; that is, the combined probabilities equate to a plausibility. In converting from medical to layman's language, "it's extremely likely that he is the father" is about as close as you can come.
CROSS EXAMINATION OF DR. LESLIE BRYANT, JR.
With respect to the terms "probabilities" and "possibilities" and the question of whether or not Thomas E. Grimsley is the father of Charles Stines (Grimsley), I can say that Thomas Grimsley is more probable than not the father. It is because of the closeness to which Thomas Grimsley's antigenic profile matches the biological father's profile that I would say that Thomas E. Grimsley is more probably than not the father. The plausibility percentage of 99.6 leaves room for only 4/10ths of a percent for error. It is not often that there is a higher probability than 99.6%, but it does occur.

Conclusion
We recognize the rule stated in Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975), and cases following Paymaster, setting out when a motion for directed verdict or judgment notwithstanding the verdict, may not be granted. However, cases occur where the evidence is sufficient to withstand a motion for directed verdict or motion for judgment notwithstanding the verdict, yet the verdict is contrary to the overwhelming weight of the evidence. In the case sub judice, while the motion for judgment notwithstanding the verdict was properly overruled, we are of the opinion that, considering (1) certain inconsistencies and contradictions in appellee's testimony, (2) the sworn formal acknowledgment of paternity by the appellee and appellant, (3) alteration of the birth certificate following that acknowledgment of paternity, (4) sworn written acknowledgment that appellant is the father of the child, and the agreement as to custody and support for the child, and (5) the paternity study and blood tests conducted by Dr. Bryant, together with the matter hereinafter *485 discussed, require that this case be reversed and remanded.
The appellant has assigned as error that the lower court required the jury to consider the case in the early hours of the morning, which resulted in prejudice to the appellant. The point was not developed to the extent of Edge v. State, 393 So.2d 1337 (Miss. 1981), and was not properly preserved in the court below. The briefs indicate that the case was submitted to the jury at 11 p.m. and that the jury deliberated until approximately 4:30 a.m., a period of five and one-half (5 1/2) hours, before returning a verdict against the appellant. We think that it was error, under the facts of this case, for the jury to consider its verdict during that period of time, and we note it as plain error under Miss.Supreme Ct. Rule 6. We remind trial judges that requiring or permitting juries to deliberate on cases during such times may cause their verdicts to become suspect. Certainly, members of an average jury are fatigued, exhausted, and anything but concerned and alert after hearing a case until 11 p.m. and then deliberating until 4:30 a.m. This Court will look closely at records and verdicts rendered under such circumstances.
The judgment of the lower court is reversed, and the case is remanded for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER, P.J., and BOWLING, HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.

APPENDIX
STATE OF MISSISSIPPI COUNTY OF PEARL RIVER

AGREEMENT
This agreement made and entered into by and between Thomas E. Grimsley and Virginia Ann Stiens [sic] Tyner, on this the 23rd day of October, A.D., 1978, as follows: WITNESSETH:
1. That the name of the minor child, Charles Thomas Stines, born out of wedlock, shall be changed to that of Charles Thomas Grimsley.
2. That Thomas E. Grimsley, father of said minor child shall pay $100.00 per month for child support until the child reaches the age of 18 years.
3. That Thomas E. Grimsley shall have reasonable visitation rights to see said minor child.
4. That Virginia Ann Stiens [sic] Tyner, shall have permanet [sic] custody and Thomas E. Grimsley will not take any action to take custody of said child until the age of 18 years of age.
WITNESS OUR SIGNATURES on this the 23rd day of October, A.D., 1978.
 /s/ Thomas E. Grimsley
 THOMAS E. GRIMSLEY
 /s/ Virginia Ann Stines Tyner
 VIRGINIA ANN STIENS [sic] TYNER
STATE OF MISSISSIPPI COUNTY OF PEARL RIVER
Personally appeared before me, the undersigned authority, in and for the aforesaid jurisdiction, the within named, THOMAS E. GRIMSLEY and VIRGINIA ANN STIENS [sic] TYNER, who each acknowledged that they signed, executed and delivered the above and foregoing instrument of writing on the day and in the year as therein mentioned.
GIVEN under my hand and official seal on this the 23rd day of October, A.D., 1978.
 /s/ Judy Ann Bennett
 NOTARY PUBLIC
My commission expires:
9/12/82