0662

Betty SLIGH, Administratrix of the Estate of Martha Murphy, Appellant v. James H. JOHNSON, Jr., M.D., and Stanmore E. Reed, M.D., Respondents.

(342 S. E. (2d) 620)

Court of Appeals

*Charles L. Henshaw, Jr.*, of the *Law Offices of O. Farrell Furr, Jr.*, and *Phillip J. Mace*, Columbia, *for appellant.*

*Charles E. Carpenter, Jr.*, and *Donald V. Richardson, III, Richardson, Plowden, Grier & Howser*, Columbia, *for respondents.*

Heard Dec. 10, 1985.

Decided March 24, 1986.

HOWELL, Acting Judge:

Appellant, Betty Sligh, in her capacity as administratrix of the estate of Martha Murphy, brought survival and wrongful death actions against respondents, Dr. James H. Johnson, Jr. and Dr. Stanmore E. Reed, for alleged medical malpractice. The actions were consolidated for trial, and the jury returned a verdict in favor of Johnson and Reed. Ms. Sligh moved for a judgment *non obstante veredicto* or, in the alternative, a new trial, on the ground that the trial judge erred in admitting the results of a drug screen for which a complete chain of custody had not been established. The trial judge denied the motion. We affirm.

Mrs. Murphy, who suffered from severe hypertension, was found dead in her home on April 5, 1980. She was 45 years old, 5 foot 3 inches tall, and weighed approximately 270 pounds. At the time of her death, she was approximately six months pregnant.

Ms. Sligh alleged in her complaint that Johnson and Reed were negligent in failing to recommend hospitalization to Mrs. Murphy, in advising Mrs. Murphy that outpatient ther-

apy was an appropriate alternative to hospitalization, in advising Mrs. Murphy that she could return to work, in not explaining to Mrs. Murphy the risk of fatality from exercise and physical strain, in not implementing adequate anti-hypertensive drug therapy and in not using diagnostic procedures to determine whether Mrs. Murphy's heart was enlarged.

The only allegations necessary for consideration in this appeal are Johnson's and Reed's alleged failures to hospitalize Mrs. Murphy and advise her of the inadequacy of outpatient treatment. It is apparent from these allegations and from Ms. Sligh's briefs and arguments that her case rested on the theory that the failure to place Mrs. Murphy in a hospital, where her hypertension and medicinal intake could have been monitored as an outpatient, resulted in her failure to medicate herself properly and contributed to her death.

Ms. Sligh argues that the trial judge erred in admitting a drug screen test and the testimony of a SLED toxicologist because Johnson and Reed failed to establish a complete chain of custody. The evidence showed the absence of prescribed medication in Mrs. Murphy's blood at the time of her death. However, Dr. Henry Hall, the physician who drew the blood sample on which the drug screen was run, died before the trial, leaving a gap in the chain of custody. Evidence of the chain began with the testimony of James Anasti, deputy coroner of Richland County, who had requested that Dr. Hall obtain a blood sample. Anasti and Dr. Hall employed a code to facilitate record-keeping; if Dr. Hall's handwriting appeared on the envelope containing a sample, it meant Anasti had picked up the sample from a place of storage; but, if Anasti's handwriting appeared on the envelope, it meant Dr. Hall had personally delivered the sample to him. Because his own handwriting appeared on the envelope purportedly bearing Mrs. Murphy's blood, he testified that Dr. Hall must have delivered the sample to him personally, although he had no recollection of the delivery. Neither Anasti nor any other witness could testify to what Dr. Hall did with the sample after extracting it.

Ms. Sligh contends that the gap created by Dr. Hall's death renders the proof of the chain of custody fatally

defective. Johnson and Reed contend that all available witnesses were called, that the handwriting code indicates that Dr. Hall delivered the sample to Anasti personally, and that the chain of custody was regular in all other respects.

The rule regarding chains of custody is stated in *Benton v. Pellum,* 232 S. C. 26, 33-34, 100 S. E. (2d) 534, 537 (1957):

> While proof need not negative all possibility of tampering, it is generally held that the party offering such specimen is required to establish, at least as far as practicable, a complete chain of evidence, tracing possession from the time the specimen is taken from the human body to the final custodian by whom it is analyzed. As stated in *Rodgers v. Commonwealth,* 197 Va. 527, 90 S. E. (2d) 257, 260 [1955], "Where the substance analyzed has passed through several hands the evidence must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis."

*See Tant v. Dan River, Inc.,* 286 S. C. 140, 332 S. E. (2d) 534 (Ct. App. 1985). Questions involving the admission of evidence are largely discretionary with the trial judge. *State v. Atchison,* 268 S. C. 588, 235 S. E. (2d) 294 (1977). An abuse of discretion amounting to an error of law, however, may require the intervention of the reviewing court. *South Carolina Dept. of Social Services v. Bacot,* 280 S. C. 485, 313 S. E. (2d) 45 (App. 1984); *North Greenville College v. Sherman Construction Co., Inc.,* 270 S. C. 553, 243 S. E. (2d) 441 (1978). The admission of inadmissible evidence, however, is not reversible if the evidence is merely cumulative and therefore harmless. *Martin v. Floyd,* 285 S. C. 229, 328 S. E. (2d) 637 (1985).

Johnson and Reed met the requirements of *Benton v. Pellum,* by calling all available witnesses to establish, at least as far as practicable, a complete chain of evidence.

Assuming, however, that the proof of the claim is defective, the evidence is merely cumulative and its admission was therefore harmless. The testimony is uncontroverted that Mrs. Murphy had a history of not keep-

ing doctors' appointments, not following her doctors' instructions, not having her prescriptions timely filled and therefore not medicating herself properly.

Moreover, the evidence is harmless because it is actually favorable to Ms. Sligh. Ms. Sligh sought to prove that Johnson's and Reed's negligence led to the absence of medication in Mrs. Murphy's system and contributed to her death. The absence of medication in Mrs. Murphy's system is evidenced by the very blood screen that Ms. Sligh objects to.

Ms. Sligh argues that the admission of the evidence had a prejudicial effect on the jury's consideration of Johnson's and Reed's defense of contributory negligence. However, her causes of action require for their success proof of facts that would also be necessary for the success of Johnson's and Reed's defense (absence of medication in Mrs. Murphy's system at the time of her death). We cannot resolve this paradox merely by limiting testimony.

Whether the proximate cause of Mrs. Murphy's death was Johnson's and Reed's failure to hospitalize Mrs. Murphy and manage her medication, or Mrs. Murphy's own failure to medicate herself required the same proof for a jury's consideration, and the admission of the objectionable evidence was merely cumulative and not prejudicial.

Affirmed.

SHAW and GOOLSBY, JJ., concur.