733 So.2d 349 (1999)
Mark and Konnie GROVES, Appellants,
v.
Todd J. SLATON, Appellee.
No. 97-CA-00989 COA.
Court of Appeals of Mississippi.
February 9, 1999.
*350 John R. Reeves, Jackson, Attorney for Appellants.
M. Marcia Smalley, Jackson, Attorney for Appellee.
BEFORE BRIDGES, C.J., DIAZ, PAYNE, and SOUTHWICK, JJ.
DIAZ, J., for the Court:
¶ 1. Mark and Konnie Groves, the appellants, appeal the jury decision of the Chancery Court of Hinds County which found that Todd J. Slaton, the appellee, was the biological father of Jessie Lee Groves. The appellants assert the following issues on appeal: (1) that the county court judge committed reversible error by interrupting the cross-examination of the plaintiff's expert witness in order to ask his own questions, (2) that the trial court erred by excluding from evidence a letter written by Slaton to Konnie Groves, (3) that the trial court erred by allowing two photographs into evidence of Slaton and Konnie Groves, and (4) that the trial court committed reversible error by engaging in a continued pattern of bias and error during the course of the trial. Finding the appellants' assignments of error to be without merit, we affirm the decision of the county court.

*351 FACTS
¶ 2. Slaton and Konnie Groves met during the summer of 1993, and their relationship progressed from friendship into a sexual affair by October 1993. The relationship lasted another year. Throughout the affair, Slaton and Konnie engaged in protected and unprotected sexual relations. In April 1994, Konnie administered a home pregnancy test to herself at Slaton's apartment and discovered she was pregnant. Konnie told Slaton that he was the father of the baby since her husband Mark had had a vasectomy. Slaton attended some of Konnie's prenatal visits and paid a portion of her medical bills.
¶ 3. When Konnie was six months pregnant, she and Slaton had their photograph taken by a professional photographer. Later, Slaton wrote a letter to Konnie asking her not to tell the baby that he was the father and also stated that Mark Groves was the father. The photographs, but not the letter, were introduced into evidence at the trial.
¶ 4. DNA genetic testing was performed on Slaton, Konnie, and the child, Jessie Lee Groves, by Scales Biological Laboratory of Brandon, Mississippi. The test results indicated that Slaton was not excluded as the father and that the relative odds of him being the father was 99.99 percent, assuming a 50.00 percent prior probability. Dr. R.W. Scales was unable to establish the chain of custody for the blood sample of Mark Groves because that blood was drawn in Texas while the testing was done in Mississippi. During the cross-examination of the expert witness, the judge asked several questions for clarification to which the Groveses objected.
¶ 5. The jury returned a verdict for Slaton that he was the biological father of Jessie Lee Groves. The case was returned to the chancery court to determine issues of visitation and support. However, the chancellor transferred those remaining matters to Texas since all of the parties now reside there.

DISCUSSION

I. WHETHER THE JUDGE COMMITTED REVERSIBLE ERROR BY INTERRUPTING THE CROSS-EXAMINATION OF THE PLAINTIFF'S EXPERT WITNESS TO ASK QUESTIONS
¶ 6. Under Mississippi Rule of Evidence 614(b), the court may interrogate witnesses, whether called by itself or by a party. M.R.E. 614(b). The Mississippi Supreme Court established guidelines for judicial interrogation under M.R.E. 614(b). Griffin v. State, 171 Miss. 70, 156 So. 652 (1934). Judicial interrogation is appropriate "when a nervous witness needs to be calmed or is reluctant to testify or is confused as well as when the witness has important information which has not been elicited from him." M.R.E. 614 cmt.
¶ 7. The trial judge interrupted questioning of the expert witness when he sought to inquire about Mr. Groves's blood test. The trial judge's questions which are in issue are as follows:
BY THE COURT: When was that taken?
A. April the 26th, 1996.
BY THE COURT: Why did you require him to go to Texas and do it?
A. He was living in Texas I guess.
BY THE COURT: When were the results out?
A. The results were mailed in the case of Mr. Groves on May 21st.
BY THE COURT: Did he request another test shortly thereafter because he felt aggrieved?
¶ 8. The judge interrupted the Groveses' attorney to ask pertinent, clarification questions which were remedial in nature and well within the judicial interrogation of a witness contemplated in Griffin and M.R.E. 614(b). Slaton, Konnie Groves, and Jessie Lee were all administered a genetic blood test in Mississippi in 1995 nearly a year before Mark Groves's blood *352 was taken in Texas in April of 1996. The court's first three questions to the expert witness helped clarify a sequence of events not in dispute by either party.
¶ 9. The final question by the judge was whether or not Mr. Groves requested a second blood test to establish paternity. The trial judge was aware of Miss.Code Ann. § 93-9-23 which outlines basic principles for blood tests, experts, and challenges to test results. Importantly, Miss. Code Ann. § 93-9-23(2) states that a "party may challenge the testing procedure within thirty (30) days of the date of receipt or service of the notice." Miss.Code Ann. § 93-9-23(2). Furthermore, if no timely challenge to the original test results is made, then the certified report is admitted as evidence in the proceeding as prima facie proof of its contents. Miss.Code Ann. § 93-9-23(3). Knowing that Mark Groves did not request additional blood tests helped the trial judge determine that the questioning was irrelevant, and therefore, she was able to focus testimony and questioning on relevant issues. Since the trial judge operated within statutory and case law when she asked the witness several questions for clarification there is no need to address appellants' arguments that the judge erred by not granting mistrial or not issuing a corrective statement to the jury.

II. THAT THE TRIAL COURT ERRED BY EXCLUDING FROM EVIDENCE A LETTER WRITTEN BY SLATON TO KONNIE GROVES
¶ 10. Mississippi Rule of Evidence 401 states:
"Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
¶ 11. Although the Groveses argue that the letter was relevant under M.R.E. 401, they also argue that the letter was an admission of a party opponent since it is a "statement offered against a party and is (A) his own statement, in either his individual or a representative capacity." M.R.E. 801(d)(2)(A). However, the trial court specifically asked the Groveses' attorney whether he wanted the letter admitted into evidence as a declaration against interest by Slaton, and he declined that opportunity. The lower court had to determine whether the letter in question was relevant to the sole issue to be decided upon by the jury-the paternity of Jessie Lee Groves. After reviewing the letter and allowing the Groveses' attorney the opportunity to make a proffer, the trial judge ruled that the letter was irrelevant by stating, "that letter doesn't shed any light on it one way or the other." The trial judge correctly ruled that the letter was not relevant and should be excluded because it would not have had bearing on the biological identity of the child in question.

III. WHETHER THE TRIAL COURT ERRED BY ALLOWING TWO PHOTOGRAPHS INTO EVIDENCE OF SLATON AND KONNIE GROVES
¶ 12. The relevancy of the photographs also depends on Mississippi Rule of Evidence 401 which holds that evidence is relevant which tends to make the fact that is in issue more or less probable than it would be without the evidence. Here, the fact in issue is the biological identity of Jessie Lee Groves. Since the courts do not recognize blood tests as infallible nor do they accept blood tests as conclusive proof of paternity, Slaton had to produce other evidence to establish his claim of paternity. Chisolm v. Eakes, 573 So.2d 764, 767 (Miss.1990).
¶ 13. Part of the case that had to be proven by Slaton was the existence of a sexual relationship between himself and Konnie Groves. In this paternity action, Slaton had to prove that he was the biological father beyond a reasonable doubt. Since no stipulation was offered at the outset of the trial or instruction given to *353 the jury that a sexual relationship existed between Slaton and Konnie Groves, the first of the photographs entered into evidence was merely part of Slaton's case-in-chief which required that he prove beyond a reasonable doubt that he had sexual relations with Konnie Groves during the time she conceived Jessie Lee Groves.
¶ 14. The second photograph was admitted into evidence for the purpose of impeachment of Konnie Groves after she testified that she was afraid of what was going to happen in her life. Konnie Groves testified that she was afraid at the time she took the pregnancy test at Slaton's apartment in April 1994 even though she later had photographs made with Slaton in September 1994 when she was approximately six months pregnant. The photograph in question depicted Slaton and Konnie Groves as a couple with relaxed, happy expressions on their faces. These photographs might have also helped Slaton prove that a sexual relationship between himself and Konnie Groves existed. Although the two photographs are similar, each was offered and admitted into evidence for distinct purposes. There was nothing unusual about the photographs of the couple which could have caused an inflammatory reaction by the jury, and they were certainly probative and relevant in helping the jury decide the issue of paternity.

IV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ENGAGING IN A CONTINUED PATTERN OF BIAS AND ERROR DURING THE COURSE OF THE TRIAL
¶ 15. The Groveses also argue that the trial court committed reversible error by engaging in a continued pattern of bias and error during the course of the trial. However, they cite no legal authority in support of this assignment of error. The supreme court has repeatedly stated that it is the appellants' duty to provide authority in support of his claims of error. Drennan v. State, 695 So.2d 581, 585-86 (Miss.1997). Accordingly, the Groveses' failure to cite authority in for this issue precludes appellate review.
¶ 16. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANTS.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., COLEMAN, IRVING, KING, LEE, PAYNE, and SOUTHWICK, JJ., CONCUR.